15419

PARKER PEANUT COMPANY v. FELDER *ET AL.*

(20 S. E. (2d), 716)

204

August, 1941.

*Messrs. Felder & Rosen* and *Messrs. Zeigler & Brails-ford,* all of Orangeburg, Counsel for Appellants,

*Mr. Adam H. Moss, Mr. James A. Moss, Mr. Reddick A. Bowman* and *Mr. Carroll E. Summers,* all of Orangeburg, Counsel for Respondents,

June 2, 1942.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM.

The action in this case, which now involves a number of parties, had its inception in a proceeding commenced by the respondent against M. H. Felder and Company, on March 28, 1940, in the nature of a creditor's bill containing a prayer for the appointment of a Receiver, to which complaint the defendant strenuously objected, denying insolvency, and resisting, by its pleadings, the appointment of a Receiver. After due notice, the question of receivership was heard by the Honorable G. Dewey Oxner, presiding Judge, who took considerable testimony and continued the hearing until a later date.

On or about March 29, 1940, Bob Clark, by summons and complaint, commenced a suit against the same defendant for the same purposes as those named in the earlier action. To the later action the defendant, by its answer, duly verified by Grace K. Felder, one of the owners of the business, admitted the necessity of a Receiver, and by consent the Honorable M. M. Mann, resident Judge, on April 4, 1940, appointed a Receiver for the defendant company in the Clark suit. Immediately thereafter, Parker Peanut Company, whose action had been commenced one day earlier than the action in the *Clark case,* intervened in the latter suit. The matter was again referred to Judge Oxner, who consolidated both actions, continued P. F. Haigler as Receiver for the defendant, and appointed an auditor to audit the affairs of the defendant.

Following the merger of the two creditor's bills, Charles R. Allen, on behalf of himself and all other creditors of the defendant, instituted an ancillary proceeding therein for the purpose, among other things, of stripping the corporate veils from the named defendant, M. H. Felder and Company, and also from M. H. Felder Real Estate Company and from M. & H. Grocery Company, and holding M. H. Felder and Grace K. Felder liable as an association of persons.

The persons thus sought to be held liable as an association of persons are husband and wife. In 1922 the State of South Carolina had issued to them a charter permitting them to form a corporation to be known as M. H. Felder and Company. The proposed business firm was to have no officers, directors or stockholders other than M. H. Felder and Grace K. Felder. Two years after the issuing of the first charter, a second charter was issued by the State, authorizing the incorporation of a second business, which was to have only the same personnel, and which was to be known as the M. H. Felder Real Estate Company. On February 1, 1940, the State issued a third charter, empowering M. H. Felder and Grace K. Felder to organize a business firm to be known as M. & H. Grocery Company. It was contemplated that the two

named individual defendants herein were to be the only stock-holders, officers and directors of any of the three business organizations for which charters had been granted. Upon the issuing of the charters, M. H. Felder and Grace K. Felder commenced trading in the names contained respectively therein, and up until the time of the commencement of this action there had been no change in the ownership, control, or management of any of said businesses.

On May 14, 1940, a rule was issued requiring all defendants named herein to show cause why a Receiver should not be appointed to take charge of the assets and affairs of all. After a hearing, orders were passed by the Court appointing P. F. Haigler as Receiver for all defendants. From these orders of the Court, the defendants appealed to this Court, and after due time this Court adopted the order of the Honorable M. M. Mann, Circuit Judge, dated June 21, 1940, as its opinion in the case of *Parker Peanut Company v. M. H. Felder and Company (Allen v. Felder et al.)*, 196 S. C., 271, 13 S. E. (2d), 143.

In view of the fact that a Receiver was appointed for the assets and affairs of the defendants upon a *prima facie* showing, the defendants desired a final determination of the facts upon which the appointments were made. Following the first appeal to this Court the case was then referred to the Honorable J. A. Merritt for the purpose of determining all issues of law and fact raised in the original action, together with such issues raised in the ancillary action of Charles R. Allen. Numerous references were held, and an abundance of testimony was submitted.

In due time reports were filed by the Special Referee, sustaining the contentions of the respondent, Parker Peanut Company, and of the ancillary complaint of Charles R. Allen, whereupon notice of a motion for an order confirming the reports was duly served.

On February 17, 1941, three days after the reports of the Special Referee had been filed, M. H. Felder and Grace K.

Felder, each individually, and in behalf of their three business concerns, being all of the appellants herein, filed voluntary petitions in bankruptcy, and upon ex parte appearances before the United States District Court, obtained orders recognizing each of the business concerns as a separate entity, and affording to each the privileges and the protection due litigants entering that Court in good faith. Whereupon Charles R. Allen, one of the plaintiffs herein, filed petitions in each of the bankruptcy proceedings, praying leave to intervene therein and to move for an order setting aside each of the adjudications in bankruptcy and dismissing the proceedings on the ground of fraud. The petitions thus filed by Charles R. Allen were practically identical in each of the bankruptcy proceedings, as were the returns which were filed thereto. On May 29, 1941, the Honorable Alva M. Lumpkin, Judge of the United States District Court, signed separate orders, dismissing each of the bankruptcy proceedings, all upon the same grounds, and in similar orders, except that the order in the matter of M. H. Felder, Bankrupt, D. C., 39 F. Supp., 453, 455, contained a fuller discussion than is found in the other cases. In that order Judge Lumpkin found that:

"The fraud disclosed by the record before me and as found by the Supreme Court of South Carolina will prohibit this court's granting discharges to the petitioners in bankruptcy, and I know of no relief available to the litigants in this court which is not available in the state court.

\*　　\*　　\*

"When the Supreme Court of South Carolina in adopting Judge Mann's decision determined that the corporations in question were mere fictions and that the veil of each should be pierced by the Court and the property of each brought into the hands of the receiver for the individuals involved as an association of persons, then I am bound by this adjudication, but even if I were not, from my study of the evidence I am convinced that these findings were correct.

\*　　\*　　\*

"His [Judge Mann's] final decision was approved in every detail and adopted by the Supreme Court of South Carolina as its decision in this case, and this court is and ought to be bound by the conclusions reached there, and I so conclude.

\* \* \*

"It is therefore ordered, adjudged and decreed, that the adjudication on the voluntary petition in bankruptcy of M. H. Felder filed in this court be set aside and rescinded and the same is hereby dismissed."

No appeals were taken from the orders of Judge Lumpkin, the effect of which was to recommit the appellants and their estates to the jurisdiction of the Court of Common Pleas, and accordingly, shortly thereafter, attorneys for appellants were served with notice that their exceptions to the reports of the Special Referee would be called up before the Circuit Court on July 3, 1941, for determination. The exceptions were duly heard by Judge Mann, who, on July 25, 1941, filed an order confirming the findings of fact of the Special Referee and slightly modifying his conclusions of law. On August 20, 1941, Judge Mann filed a short amendatory order therein. From these orders of Judge Mann, the defendants, M. H. Felder, Grace K. Felder, M. H. Felder Real Estate Company and M. & H. Grocery Company, now appeal to this Court upon eleven exceptions. In addition, there is also before the Court one additional sustaining ground filed by the respondent.

We quote the exceptions in full:

"1. Because the Court erred in holding that the order of Judge Lumpkin dismissing the petitions of the defendants in bankruptcy was *res adjudicata* of any issue raised by the pleadings or record in this case; the error being that the said order did not determine any such issue on its merits, and the effect of the said order was merely to hold that the defendants did not have the right at that stage of the proceedings to have their affairs litigated in the Bankruptcy Court.

"2. Because the Court erred in holding that while the exceptions of the defendants which called for the application of the principle that the transfer of an asset could not be brought in question by a creditor who was not in existence at the time of the transfer, nor unless the debtor was insolvent at the time the transfer was made, invoked a principle that was fundamentally sound, yet it was not applicable to the facts in this case; the error being that the testimony shows that all of the transfers made in this case were made under the circumstances stated, except some of the transfers made to the 'stores' (M & H Grocery Company) and some to M. H. Felder

"3. Because the Court erred in holding that the defendants were engaged in a 'gigantic scheme' or plan to defraud creditors generally; the error being that there is no testimony in the case which shows this.

"4. Because the Court erred in holding that the defendant, Grace K. Felder, was engaged in a 'gigantic scheme or plan to defraud creditors generally'; the error being that there is no testimony in the record to sustain this finding, but, on the other hand, the testimony is positive that Mrs. Felder did not participate in any of the transactions shown in the record and knew nothing of them—and certainly she knew nothing of any scheme to defraud creditors.

"5. Because the Court erred in holding in the 'instant case' we have an association composed of two people doing business under five names and, regardless of the transaction the said association or the two people were liable for the debts arising from the transaction; the error being that the pleadings in the case and the testimony show that the business and transactions referred to were done by M. H. Felder and Grace K. Felder, as individuals, and by M. H. Felder & Company, M. H. Felder Real Estate Company and M & H Grocery Company—and the plaintiffs having alleged the latter three persons are corporations, and did business as corporations, and the defendants having admitted that—the

plaintiffs and the creditors are conclusively estopped from denying that the corporate defendants are corporations, that they did business as corporations, or that they were not liable as corporations for their own corporate debts.

"6. The Allen complaint specifically alleges that M. H. Felder & Company, M. H. Felder Real Estate Company and M & H Grocery Company, are corporations and did business as corporations, and the amended answer of the four defendants specifically admitted these allegations; hence the corporate existence of these three corporations was an admitted fact in the case, conclusively binding upon the parties and upon the Court, and it was error of law for the Court to make a finding contrary thereto.

"7. Because the Court erred in holding that no corporations *de jure* or *de facto* have ever come into existence— the errors being: (1) That the corporate existence of M. H. Felder & Company, the Real Estate Company and M & H Grocery Company, was alleged in the Allen complaint and admitted in the answer of the defendants; (2) That the plaintiffs (the creditors) had dealt with M. H. Felder & Company as a corporation and were, therefore, estopped to deny its corporate existence; and (3) That the corporate existence of these corporations cannot be attacked in this case by the plaintiffs, because the same would be a collateral attack on their corporate capacity—although a creditor may pierce. the corporate veil of an existing corporation, in an appropriate case, to redress an injury which has been done him.

"8. Because, with respect to the insolvency of the Felder Company, the Court erred in holding that it occurred prior to the year 1937 (the Referee had held that it occurred prior to January 1, 1939, and Judge Mann had held in his first order that it was insolvent on February 13, 1940); the error being that there is no testimony in the case which shows that the Felder Company was insolvent, either prior to January 1, 1939, or prior to the year 1937; but on the other hand,

the testimony shows that it was a 'going concern' up to April 4, 1940, and that it was not insolvent prior to that time.

"9. Because the Court erred in holding that no exceptions had been taken to the report of the Special Referee in the 'action first above entitled,' meaning the action of Parker Peanut Company against M. H. Felder & Company, and in ordering the report in that action confirmed; the error being that this holding was manifestly an inadvertence, because the record shows that exceptions were taken to the report of the Referee in that action and were duly served.

"10. Because the Court erred in ordering that the report of the Special Referee made in the ancillary action of Charles R. Allen be confirmed; the error being that there is no testimony in the record to sustain the conclusions of fact or the conclusions of law found in the said report.

"11. Because the Court erred in not saving and reserving the question of priority between and among the different classes of claimants in the case: For instance, a claimant to whom M. H. Felder owes an individual debt would be entitled to claim priority of payment out of his individual assets before the claims of the creditors of the Felder Company could come in; and the same is true of the individual creditors of the Real Estate Company: This being true, the Court erred when it held that the claims of all the creditors were entitled to payment out of the assets of M. H. Felder and Grace K. Felder, without distinction as to class or priority—thus shutting off the right of the individual creditors to claim priority, and adjudicating their claims against them before a trial had thereon (the claims have not yet been formally filed or proved)."

The additional sustaining ground, filed by the respondent, is as follows: "It appears from the facts found by the Special Referee and concurred in by the Court that the charters of the defendant corporations were procured through fraud, and the Court should have held that these charters were void *ab initio,* and that the individual defendants have

never been vested with authority to organize the defendant corporation."

All of the foregoing matters and issues will be disposed of herein, although not in the order in which the questions are stated in the exceptions.

The appellants, in their seventh exception, have stated the principle of law that in an appropriate case a creditor may pierce the veil of an existing corporation, in order to redress an injury which has been done him. Therefore no extended discussion of this general principle is rendered necessary here. In the case of *Jennings et al. v. Automobile Sales Company et al.,* 107 S. C., 514, 93 S. E., 118, this Court held that the evidence adduced was sufficient to sustain a finding that the affairs of the copartnership and the corporation were so intermingled that the plaintiffs were creditors of the corporation as well as of the copartnership, and that the business of the two concerns were not separate and distinct. In the more recent case of *Nettles v. Sottile et al.,* 184 S. C., 1, 191 S. E., 796, this Court quoted with approval from a book by Professor Wormser, entitled "Frankenstein Incorporated," from which the following quoted passage appears on page 17 of 184 S. C., page 802 of 191 S. E.: " 'Fictions are invented and instituted for the promotion of justice. As Lord Mansfield said, "It is a certain rule that a fiction of law shall never be contradicted so as to defeat the end for which it was invented, but for every other purpose it may be contradicted." There is no sound reason why the principles applicable to fictions in general should not apply to the fiction that a corporation is a person. Where, therefore, the corporate fiction is urged for fraudulent or perverted purposes, the courts may properly disregard it and look to the responsible human beings, the living members, who compose the corporation and are hidden behind the juristic screen. To bear this simple thought in mind solves many important corporation problems, for it is absurd and unjust to urge that people can do under cover of a corporation that which they

could not legally do as individuals. There is no magic in the creation and employment of a corporation—too often an empty dummy—which will whitewash wrongdoing or furnish absolution for the actions of fraudulent marauders.' "

Since it is clear that the corporate fiction may be disregarded in a proper case, we must now determine whether the Parker Peanut Company and Charles R. Allen are within their rights in urging this general principle in this particular case.

The complaint of Charles R. Allen contains the following allegation: "That the plaintiff * * * holds claims against the said M. H. Felder & Company totaling $1,354.11, and as such creditor belongs to that numerous class of persons constituting the creditors of M. H. Felder & Company who are so numerous that it will be impracticable to make them all parties to this proceeding, and as a member of the said class brings this proceeding ancillary to the action first above entitled on behalf of himself and all other members of the class for the purpose of enforcing all claims that may be proved against the defendant in said action."

The complaint then alleges that the individual appellants herein are husband and wife; that the three business concerns named herein purport to be corporations; that the individual appellants, without right or authority, have appropriated and used and expended large sums of money, the property of M. H. Felder & Company, for their own personal use, and for the use of M. H. Felder Real Estate Company and M. & H. Grocery Company, for which no accounting has ever been made; that the concerns named were wholly influenced and governed by M. H. Felder and Grace K. Felder for their personal interest; that no stockholders' meetings were ever held, no directors' meeting ever held, and that no records exist as to any such corporate activity; that the individual appellants had attempted to concentrate and localize the greater part of their liabilities in M. H. Felder & Company, and to transfer the greater part of their assets to them-

selves and to the other concerns for the purpose of defrauding their creditors; that the individual appellants had intermingled the assets and credits of the companies named, with their own personal business and affairs, and that unless the Court ignores the corporate fictions of the named concerns, the creditors of M. H. Felder & Company will be subjected to great loss for which they will have no redress. The complaint contained many other material allegations, as did the complaint of Parker Peanut Company, similarly situated, and also a creditor of M. H. Felder & Company. All other creditors so situated are represented in the Charles R. Allen ancillary proceeding. We must therefore conclude that the present parties and the nature of the present action are entirely proper for the purpose of invoking the principle of disregarding the corporate fiction.

The appellants contend strenuously that the Circuit Court erred in disregarding the corporate fiction and holding M. H. Felder and Grace K. Felder to be an association of persons doing business under the guise of corporate names. This contention is based upon the argument that the corporate existence of the business concerns was an admitted fact in the case. It is true that the complaint of Charles R. Allen refers in several places to these concerns as "the said corporations." Under the facts of the case, we can see little else that these businesses could have been called. They held themselves out to be *bona fide* corporations and dealt as such with innocent parties. Charters had been issued by the State upon each application. Naturally, until there should be a final determination that no corporations existed, such concerns as entities could not have been ignored and disregarded as non-existent. Such a right rests only with the proper Court, not with litigants. However, the complaint referred to, from which we have quoted, and some of whose provisions we have stated, obviously shows that Charles R. Allen did not consider these concerns to be *bona fide* corporations. He took pains to refer to them as purported cor-

porations, and to set forth reasons why corporate entity should be disregarded. It may be that some persons dealt with these concerns as corporations, but they had the right to deal with them as *bona fide* corporations, and were not required to anticipate fraud. Under the complaint as a whole, we think that the allegations were entirely sufficient to permit the introduction of evidence that the purported corporations were used by M. H. Felder and Grace K. Felder as blinds behind which to hide themselves for the purpose of defrauding creditors. Paragraphs 11, 12 and 13, in particular, some of whose allegations we have mentioned, allege facts which are entirely inconsistent with any theory of corporate entity in these matters.

The Special Referee found as matters of fact, and such findings were confirmed by the Circuit order of July 25, 1941, that from the date of the issuing of the charter in 1922, M. H. Felder & Company never held a stockholders' or directors' meeting; that it had no stock or minute books; that no stock certificates were ever issued, and that prior to January 1, 1939, it had no books whatever, which would indicate that that business was anything other than a partnership owned and operated by the individual appellants herein, and that after January 1, 1939, it was impossible to determine from the books of the business who its owners were; that M. H. Felder and Grace K. Felder were the sole owners and managers of M. H. Felder Real Estate Company; that no stockholders' or directors' meetings were ever held; that no stock certificates were ever issued; and that it kept no books from the date of the issuing of the charter in 1924, to January 1, 1940. M. H. Felder testified that the real estate company had and kept no record of any of its transactions other than those required by law to be recorded in the office of the Clerk of Court. Similar evidence and findings as to M. & H. Grocery Company are in the record in this case, except that the charter issued in that matter was more recent.

When the first appeal in this case was before us, this Court said on page 285 in its opinion in 196 S. C., page 149 of 13 S. E. (2d), *supra*: "This record is the record of a course of conduct adopted by two individuals wherein corporate fictions were used by these two individuals for the purpose of enriching themselves at the expense of their creditors and in which the conduct of the individuals violates the sanctity of the corporations with such reckless abandon that this court must pierce the corporate veil for the purpose of discovering the parties responsible for this course of conduct and hold them liable as an association of persons. There appears to be an absolute unity of interest of M. H. Felder and Grace K. Felder with the defendant corporations and an adherence to the fiction of the separate existence of the corporations would, under the facts now before the court, sanction fraud and promote injustice."

In addition to the facts which were then before the Court, we now have before us the printed transcript of eight hundred pages of additional testimony, together with the able and comprehensive report of the Special Referee and the order of Judge Mann, all of which serve to strengthen the views which this Court had earlier expressed before the full facts were before us. Therefore we are in full accord with the holding of Judge Mann when he said in his order of July 25, 1941:

"The defendants were engaged in a gigantic scheme or plan to defraud creditors generally, and their transfers of assets from one name to another in reality resulted in no change of ownership of the asset so transferred and amounted to nothing more than setting the stage for the final act which was to be the liquidation of the business conducted in the name of M. H. Felder & Company. The attempted transfers amounted to nothing more than an effort on the part of M. H. Felder and Grace K. Felder to conceal their assets and place the same beyond the reach of creditors.

"In the instant case we have an association composed of two people doing business under five names and regardless of what name in which title to property is held by the two individuals it will at all times remain liable for their debts."

The testimony in this case is too prodigious for discussion here, and we cannot, therefore, analyze the facts upon which we base all of our conclusions. Suffice it to say that the record is replete with an abundance of testimony overwhelmingly justifying the Special Referee's findings of fact which were in all particulars confirmed by the order of Judge Mann.

The appellants contend, in their fourth exception, that Grace K. Felder did not participate in any of the transactions shown in the record and that she knew nothing of them, nor did she know of any scheme to defraud creditors, and in support of their contentions they cite, in their brief, certain negative testimony as to things which she did not do, including the testimony of her husband that she did not engage actively in any of the business conducted by any of the business concerns.

But the record also contains positive testimony as to things which Mrs. Felder did do. On April 4, 1940, by her sworn statement verifying the answer of M. H. Felder & Company in the Bob Clark suit, she admitted the necessity of a Receiver and consented to receivership. It is difficult to believe that she would have executed such an affidavit without any knowledge of the affairs of the company. The testimony of C. E. Summers, pp. 48-79 of the old Transcript of Record, contains facts which convince us that Grace K. Felder was aware of the juggling and confusion of accounts and titles which was continually in progress. It appears from the testimony of Mr. Summers that the title to the home, valued at between $15,000.00 and $28,000.00, is in the name of Grace K. Felder, and that it was paid for either directly or indirectly by M. H. Felder & Company and by the M. H. Felder Real Estate Company; also that the title to the farms,

valued at between $12,000.00 and $18,000.00, is in the name of Mrs. Felder, and that payment was made, either directly or indirectly, by the same two named concerns. A Buick automobile, which was used and claimed by Mrs. Felder, was paid for by M. H. Felder & Company, which also paid the taxes, insurance and licenses thereon. The record also contains positive testimony that over a period of years, Mrs. Felder collected monthly from $150.00 to $200.00 in rents from property in the name of M. H. Felder Real Estate Company, and in her name, and used it as spending money. Meanwhile, debts were contracted in the name of M. H. Felder & Company while the assets were transferred either to Grace K. Felder, M. H. Felder, or to their business concerns, with such confusion that the Circuit Court unqualifiedly adopted the finding of the Special Referee that: "The assets and affairs of the defendants have at all times been so inextricably intermingled and jumbled that separation of the one from the other is impossible."

As has been aptly stated in the brief for the respondents: "The plan or scheme is similar to a mosaic design. A single fragment may be difficult to cipher, but when all the pieces are placed in order or in its pattern, then the true picture stands out in bold relief."

Without discussing in greater detail the almost innumerable transactions, we must hold that we see no other conclusion than that the individual appellants were active participants in a general plan to defraud creditors by obscuring their machinations behind the screen of corporate fictions.

The Circuit Court has correctly found that although charters were issued by the State authorizing corporate entities in accordance with the desires of M. H. Felder and Mrs. Grace K. Felder, no *bona fide* effort has ever been made by either of these individuals to organize and bring any corporations into being. In no case has a complete and separate entity been brought into existence. The defendants, M. H.

Felder and Grace K. Felder, obtained the charters for the purpose of using corporate names in the transaction of their personal business, and in an attempt to avoid any liability that might accrue to them individually. The Circuit Court found the evidence convincing that corporate cloaks were donned by the individuals as a subterfuge to defeat justice, to justify wrong, and to perpetrate fraud of the grossest character. The Circuit Court found that: "The conduct of these two defendants both prior and subsequent to the institution of this proceeding by Charles R. Allen is also convincing that they are utterly without regard for the rights of others  *   *   * ."

We quote with approval from the order of Judge Mann, dated July 25, 1941: " *   *   * the Referee  *   *   * found that no corporate entities were organized by the individual defendants pursuant to the powers and franchises contained in the charters of the defendant corporations and that no corporations *de jure* or *de facto* have ever been brought into existence. These findings are fully supported by the evidence. Under the above circumstances the charters of the defendant corporations evidence powers delegated to the individual defendants by the State, which powers these individuals have never exercised; consequently, whether or not the charters authorizing the individuals to organize corporations were void *ab initio* can in no way affect a decision of this case."

The granting of a charter by the State does not create a corporation. It is merely permissive. It authorizes the petitioners to organize, to create, and to bring into being the corporation which the State has authorized. It devolves upon the parties themselves to form the corporation by their acts, such as issuing stock, the holding of meetings of the stockholders and of the directors, the keeping of minutes, records and accounts, the passing of by-laws, and similar organizational functions. We are not attempting here to prescribe what acts of the parties are essential to the organization of a corporation, but we do say that the evidence in this case

justifies the decision that the parties made no attempt to perform the usual acts attendant upon the formation of any corporation.

The respondents, in their additional sustaining ground, urge that the Circuit Court shall have held that the three charters granted by the State were void *ab initio,* and that the individual defendants have never been vested with authority to organize the purported corporations. We have already held that no corporations *de jure* or *de facto* have been brought into existence, and therefore we sustain the Circuit Court in holding that, a determination as to whether the charters were void *ab initio* is not material to the present case, and that such question should be determined in some case in which it may be material.

The eighth specification of the appellants submits that the Court erred in holding that the insolvency of M. H. Felder & Company occurred prior to the year 1937. In this connection the Circuit order held: " * * * Upon a review of the record I can find no evidence of any unusual losses sustained by any of the defendants, which indicates to my mind that the insolvency of the defendants was a condition which developed slowly and I feel that the Referee could with all propriety have held that it definitely appears that insolvency occurred prior to the year 1937, and I so find. In fact, there is substantial evidence in the record that the defendants became insolvent during the depression of 1932 and '33."

We therefore interpret the Circuit decree to hold that the defendants, as an association, without specific reference to M. H. Felder & Company, became insolvent prior to the year 1937. We think that the record supports the Circuit decree. No exception is made to the finding that the defendants became insolvent, as a group or association, prior to 1937. Furthermore, in view of our holding that M. H. Felder & Company never functioned as a corporation, the question raised by this exception becomes immaterial.

The ninth exception of the appellants has been disposed of and rendered inoperative by the amendatory order of Judge Mann, dated August 20, 1941. The question raised by this exception has thus been cured, and requires no further discussion, or consideration.

The appellants urge that the corporate existence of these three business concerns cannot be attacked in this case by the plaintiffs on the ground that such would be a collateral attack on their corporate capacity.

In the case of *First Carolinas Joint Stock Land Bank of Columbia v. Knotts et al.,* 191 S. C., 384, at page 401, 1 S. E. (2d), 797, this Court held that a judgment may be attacked collaterally (that is, in an action other than that in which it was rendered) upon proof of fraud. In the present case we have the analogous situation of a collateral attack upon a charter. More nearly in point is the following language found in 18 C. J. S., Corporations, § 111 (e), p. 516: " * * * where a person is induced to deal with a pretended corporation by the fraud of its members, officers, or agents, he will not be estopped to deny its corporate existence * * * when he sues to hold such members, officers, or agents individually liable."

Similarly, we find in 13 Am. Jur., 204, Section 60: "If the alleged corporation has no existence either *de jure* or *de facto*—as, for example, in the case of fraud in an attempted incorporation in a jurisdiction holding corporate existence thereby precluded—the legality of its existence may be made the subject of collateral attack * * * . Again, the rule that collateral attack on the organic entity or existence of a corporation will not be permitted does not apply when the lack of right or the wrongdoing of the corporation is in issue because in violation of public policy or of express or implied statutory requirement, * * * ."

In the case of *Chicora Exporting and Importing Company v. Crews,* 6 S. C., 243, this Court permitted a collateral attack by the defendant upon the plaintiff's charter, and held

that the Act of the legislature creating the corporation was null and void as against public policy.

And in 18 C. J. S., Corporations, § 103, p. 497, we find: " * * * there is no corporation, either *de jure* or *de facto,* if the attempted organization is a fraud on the law under which corporate existence is claimed."

The appellants contend that the creditors are further ██ estopped to deny the corporate existence of M. H. Felder & Company on the ground that the creditors had dealt with it as a corporation. This question has been mentioned briefly earlier in this opinion, and can be disposed of in accordance with the well-known principle that one who has acted fraudulently in the premises cannot avoid the effects of his fraudulent conduct by hiding behind the screen of a plea of estoppel.

The appellants also excepted to the ruling of the Circuit Court on the grounds that the transfer of an asset by a debtor could not be brought into question by a creditor who was not in existence at the time of the transfer, nor unless the debtor was insolvent at the time the transfer was made.

We sustain the holding of the Circuit Court upon these questions, for we are likewise of the opinion that they have no application to the facts of this case. The ancillary complaint of Charles R. Allen was brought, not for himself alone, but for the benefit of the numerous similarly situated creditors, the nature and dates of whose claims vary widely. Each of these individual claims is not now before the Court, for the matter is still under reference, and the individual claims will be submitted and offered for proof in the usual manner. It would be improper here to pass upon the merits of each claim of the numerous creditors. The Circuit Court has held, and we sustain the holding, that the defendants, as an association of persons, were insolvent prior to the year 1937, and certainly any transfers made since insolvency began were made during insolvency, by which we mean the insolvency of all the appellants.

Judge Mann has held, and we sustain the holding, that the transfers of assets from one name to another among the appellants in reality resulted in no change of ownership of the assets so transferred, and amounted to nothing more than setting the stage for the final act, which was to be the liquidation of the business conducted in the name of M. H. Felder & Company. The attempted transfers were no more than an effort on the part of M. H. Felder and Grace K. Felder to conceal their assets and to place them beyond the reach of creditors. Therefore, regardless of when insolvency occurred, we cannot see the applicability of the doctrine that before a transfer can be questioned by a creditor, it must be shown that the debtor was insolvent at the time of such transfer, or that such transfer resulted in his insolvency. The transfers involved in this action were a part of a premeditated design, whose purpose was to defraud creditors, and each transfer was merely another of a series of acts, all designed for the same purpose. Regardless of when these fraudulent acts were committed, every act of the appellants committed in furtherance of their fraudulent plan is therefore void with respect to the respondents herein.

For the same reasons, we are of the opinion that the principle that the transfer of an asset cannot be brought into question by a creditor who was not in existence at the time of the transfer has no application here. We find the following in 24 Amer. Jur., 283, Section 141: "At common law, a conveyance could be attacked as fraudulent as against creditors of the transferrer only by persons whose claims existed at the time the conveyance was made. One whose demand came into existence thereafter could not complain of the transaction. However, the Statute of 13 Elizabeth and analogous enactments afford protection against actual fraud to one whose demand has come into existence subsequent to a conveyance by his debtor. Also, where a conveyance has been set aside as being fraudulent with respect to existing creditors, the property may be held liable for the claim of a sub-

sequent creditor. The rule invalidating fraudulent preferences has been applied in favor of subsequent as well as existing creditors."

In the case of *Walker, Evans & Cogswell v. Bollmann Bros.,* 22 S. C., 512, this Court held that before a subsequent creditor can attack a settlement or transfer of a party made when not indebted, he must show that the same was voluntary and was made with reference to future indebtedness, or prove circumstances of fraud other than what arises from its being voluntary. We are of the opinion that the facts of this case are sufficiently parallel to the above holding to make this decision applicable here. And in the case of *John Iley and Wife and Others v. Jacob Niswanger,* 1 McCord Eq., 518, the Court held that a voluntary settlement, by a person not in debt, cannot be impeached by a subsequent creditor, unless made with a view to future indebtedness, or attended with some other circumstance of fraud, but void if made by a person indebted, as to subsequent creditors, but that the debt must be sufficient to raise a reasonable presumption of fraudulent intent, and beyond one's current expenses, and further, that when a deed is set aside by prior creditors, subsequent creditors may come in. It is as if it never existed.

The appellants contend that the ultimate question in this case is: How shall the assets of the appellants be distributed? We are of the opinion that this is not only not the ultimate question, but that it is not even applicable for the reason that the lower Court specifically reserved this question. As has already been pointed out in this opinion, the case has remained under reference for the purpose of calling creditors, adjudicating claims, and liquidating the assets of the defendants. No attempt was made by the Special Referee, in his report, to attempt an adjudication of the various claimants, for they were not before him. The order of Judge Mann contains the following explicit language: "It is further ordered, that this case remain under reference before J. A. Merritt, Esq., as Special Referee, to hear and determine all issues

of both law and fact that may arise out of any claim or claims filed against the defendants or any of them and against the assets or any part thereof now in the hands of P. F. Haigler, Receiver, and that he make his report or reports to this Court from time to time  *   *   * ."

Also, in the same order, is the following provision with reference to M. H. Felder Real Estate Company: " *   *   * the holders of the notes  *   *   *  were not before the Court trying any issue relating to the validity or priority of their claims. Under these circumstances the holders of those notes, in the proof of their claims, will not be bound by this adjudication but will be permitted to make any showing possible to them and raise any issue or take any position which to them may seem advisable under the facts which they are prepared to prove."

This Court, therefore, will not adjudicate claims or formulate the distribution of assets which are not before it.

The sole remaining question now before us is the effect which the orders of Judge Lumpkin, in the proceedings in bankruptcy, had upon the determination of the present case in the Courts of this State. The appellants contend that the orders issued by the United States District Court did not determine the merits of the issues which were pending in the State Courts. We think there is merit in this contention. The adjudications in bankruptcy operated as a stay of proceedings in the Circuit Court during the pendency of the bankruptcy proceedings. When the adjudications were vacated and the bankruptcy proceedings dismissed by the orders of Judge Lumpkin, the stay of proceedings in the State Courts was terminated, and the litigants were then free to proceed in the State Courts, taking up where they had left off, just as if no bankruptcy petitions had ever been filed. The question before the United States District Court was whether the persons who had filed voluntary petitions in bankruptcy were entitled to the relief which

they sought, and to be discharged. That Court determined that the parties were not entitled to receive discharges in bankruptcy. The issues before it related solely to the matters which were within its jurisdiction and which were before it, namely, the issues pertinent to the bankruptcy proceedings, and could not therefore render *res adjudicata* the issues pending in the Circuit Court of this State.

Although the learned Circuit Judge said in his order that "this Court and the parties to this action are bound by the determination of every material issue before the Bankruptcy Court," and that "it, therefore, follows that the material allegations of the complaint in this action are proved by the records of the Bankruptcy·Court," thus indicating a belief that some of the issues in this case were rendered *res adjudicata* by the orders of Judge Lumpkin, Judge Mann also said in his order that "independently of any adjudication made in the Bankruptcy Court, (I) find that the Referee has submitted a very accurate and detailed statement of fact in his report." We do not believe that the issues here were rendered *res adjudicata* by the action of the United States Court, if, indeed, such was the interpretation of Judge Mann. We think that this Court is at liberty to pass upon all issues in the case, and this we have done.

Judgment affirmed.

Messrs. Associate Justices Fishburne and Stukes, and Circuit Judges Philip H. Stoll and E. H. Henderson, Acting Associate Justices, concur.