**RAY WAITS MOTORS, Inc.,**
Plaintiff,

v.

**The UNITED STATES of America,**
Defendant.

Civ. A. Nos. 5228, 5236.

United States District Court
E. D. South Carolina,
Charleston Division.

Oct. 27, 1956.

Meyer, Goldberg, Hollings, Lempesis & Uricchio (J. D. E. Meyer), Charleston, S. C., for plaintiff.

N. Welch Morrisette, Jr., U. S. Atty., Columbia, S. C., Thomas P. Simpson, Asst. U. S. Atty., Charleston, S. C., Charles K. Rice, Asst. Atty. Gen., for defendant.

WYCHE, District Judge.

Civil Action Number 5228 is an action by the plaintiff seeking to recover income taxes alleged to have been erroneously and unlawfully assessed against the plaintiff for the year 1949, and paid under protest by the plaintiff corporation.

Civil Action Number 5236 is an action seeking to recover income taxes alleged to have been erroneously and unlawfully assessed against the plaintiff for the year 1950, and paid under protest by the plaintiff corporation.

In compliance with Rule 52(a), Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon, in the above causes, as follows:

## Findings of Fact

In 1942, J. Ray Waits became an insurance agent for the Motors Insurance Corporation and has been the insurance agent for it ever since that date.

J. Ray Waits was in the automobile business from 1924, until the middle of 1947, when he and others organized the Ray Waits Motors, Inc., which is the plaintiff in each of these cases. The corporation was organized for the purpose of taking over the franchise of the Pontiac division of General Motors Corporation, and the charter of the corporation, organized under South Carolina laws, authorized it "to buy, sell and deal in automobiles, motor vehicles and accessories, gasoline, kerosene, oil, greases and petroleum products and general merchandise usually and customarily bought and sold in connection with the conduct of a general motor vehicle sales agency, * * *." There is no provision in the charter of the plaintiff corporation authorizing it to sell insurance or to act as an agent for an insurance company. Under South Carolina law, a corporation cannot engage in any business, except that for which the corporation was chartered.

The plaintiff was incorporated for $125,000, with a paid-in capital of $75,000, consisting of 750 shares of stock of the par value of $100 each. J. Ray Waits owned 720 shares, his wife Lucille S. Waits owned 25 shares, and a nephew of J. Ray Waits, M. P. O. Murray, Jr., owned 5 shares.

It appears from the minutes of the meeting of the Board of Directors held on May 1, 1947, that the reasons for the incorporation were that J. Ray Waits desired that the automobile business should continue in the event that anything should happen to him, and he desired that his wife and his nephew should become stockholders in the corporation so that they might become familiar with the automobile business. At this first meeting, "Mr. Waits further stated that he was retaining his agency in the Motor Insurance Company, and that all income received therefrom would be retained by him and not paid unto the corporation." From an examination of all of the minutes of the various meetings of the stockholders and directors of plaintiff corporation, it appears that this was understood by the stockholders and directors, both before and at the time of the incorporation of the plaintiff.

Plaintiff's "Dealer's Selling Agreement", or Pontiac franchise, with the General Motors Corporation makes no provision that the dealer is limited to the use of insurance policies issued by the Motors Insurance Corporation.

The plaintiff corporation, Ray Waits Motors, Inc., has never held an agency agreement with Motors Insurance Corporation for the sale of insurance policies.

The plaintiff corporation carried no special account on its books for the handling of the collection of any Motors Insurance Corporation premiums, and the Motors Insurance Corporation insurance contracts were signed by J. Ray Waits as agent for Motors Insurance Corporation and not by the plaintiff corporation.

The Motors Insurance Corporation had its agency agreement with J. Ray Waits individually, and paid its commissions directly to J. Ray Waits and at no time paid any commissions to the plaintiff Ray Waits Motors, Inc.

The Motors Insurance Corporation did not require or ask the plaintiff corporation to designate an agent to sell its insurance.

In some cases cars were sold by the plaintiff corporation without insurance. In some cases Motors Insurance Corporation carried the insurance policies on the cars sold by the plaintiff corporation. A purchaser of an automobile could insure his car in any insurance company he wished, or select his own agent to write the insurance, and his own Finance Company or Bank to finance the purchase of the automobile.

The plaintiff Ray Waits Motors, Inc. has never been appointed an agent to sell insurance in South Carolina, nor has it ever applied for the appointment of any agent under the laws of South Carolina, to sell insurance, nor was it authorized to sell insurance in South Carolina.

The actions of the salesman in reference to the details of selling an automobile and asking the customer as to whether or not he desired to pay cash for same or finance the same, and as to whether the customer had his own finance and insurance arrangements or if he desired the plaintiff to arrange for the same, were merely perfunctory duties connected with the main object, which was the sale of the motor vehicle. The filling in of the sales slip was merely a nominal duty owing by the salesman to the plaintiff corporation, and the ability of the salesman to assist the purchaser of the car by arranging for financing and insurance for the purchases was an assistance by the salesman in concluding the sale of the motor vehicle and making a profit for the plaintiff corporation through the sale of the motor vehicle, and thereby causing him to earn a commission for the sale of the motor vehicle.

The insurance commissions paid by Motors Insurance Corporation to J. Ray Waits individually were as follows: 1949—$8,725.71; 1950—$10,023.38.

J. Ray Waits reported the foregoing insurance commissions as having been received by him on his personal income tax returns for the respective years, and paid the taxes thereon.

When a Motors Insurance Corporation policy was issued on a motor vehicle, the application for the policy was filed by J. Ray Waits through the Motor Insurance Corporation, who prepared the policies and sent them to J. Ray Waits for signature, and he, in turn, signed the policy and mailed it in his personal envelope with his own stamp thereon, at his own expense, to the insured.

If a customer failed to pay his Motors Insurance Corporation insurance premiums, it was J. Ray Waits' duty to look up the customer and attempt to collect the premiums.

If a customer failed to pay his Motors Insurance Corporation insurance premiums, a pro rata share of the commissions would be charged back against J. Ray Waits. They were never charged back against the plaintiff corporation, who was a stranger to the contract between J. Ray Waits and Motors Insurance Corporation.

The plaintiff corporation Ray Waits Motors, Inc. had no duty imposed upon it to sell insurance for the Motors Insurance Corporation; nor to collect premiums for the Motors Insurance Corporation; nor to approve or disapprove appli-

cations for Motors Insurance Corporation insurance; nor did it owe any duty whatsoever to the Motors Insurance Corporation. It had no contract with Motors Insurance Corporation. It had no license as an insurance agent. It could not engage in the insurance business. It had no duty to comply with any insurance agency laws of South Carolina. There is no evidence that it incurred any expense of having available to it a Motors Insurance Corporation insurance service which might aid it in selling one of its cars.

The place of business of the plaintiff corporation was operated primarily for the sale and repair of motor vehicles, and not for the sale of insurance.

The plaintiff corporation received for itself and retained no part of the premiums or commissions on the premiums arising out of the sale of any Motors Insurance Corporation policies.

The commissions paid by Motors Insurance Corporation arising out of the sale of the insurance policies were earned by J. Ray Waits under his contract with Motors Insurance Corporation, the original of which contract bears date 1942, and these commissions were not earned by the plaintiff corporation.

There was no evidence offered by the defendant as to the earning of the commissions on the insurance premiums by the plaintiff corporation. The defendant relied solely on the testimony of the witnesses for the plaintiff and its cross-examination of them.

J. Ray Waits was the President and General Manager of the plaintiff corporation during the years 1949, and 1950; he was recognized in the automobile retail field as a capable and competent dealer, who paid detailed attention to his business, having taken only one week's vacation in twenty years. He served as an officer and director of the South Carolina Automobile Dealers' Association; he gave approximately eighty per cent. of his time to his automobile business.

The salary and bonus to J. Ray Waits from Ray Waits Motors, Inc., as President and General Manager of the plaintiff corporation, were as follows: 1949, Salary $12,000; Bonus $9,088.14; Total $21,088.14. 1950, $12,000; Bonus $19,526.80; Total $31,526.80.

The following reflects a record of the business of the plaintiff corporation during the years 1949, and 1950:

Gross Sales:

| | | Units Sold: | | | |
|---|---|---|---|---|---|
| 1949 | $ 892,689.33 | 1949 | New 203 | 1950 | New 330 |
| 1950 | 1,222,350.31 | | Used 292 | | Used 361 |
| | | Total | 495 | Total | 691 |

Operating Expenses:

Net profit of Corporation after Bonus, before Federal tax:

| | | | |
|---|---|---|---|
| 1949 | $139,916.33 | 1949—$47,702.20 after 15% Bonus | |
| 1950 | 171,411.78 | 1950— 74,571.26 " 20% " | |

The Gross Sales increase by the plaintiff corporation in 1950 over 1949 was 27%. The number of units sold by the plaintiff corporation increased in 1950 to 39% over the number of units sold in 1949. The net profits increased 36% (after a 20% Bonus before income taxes) over 1949 when the Bonus paid to J. Ray Waits was 15%. The salary-bonus which the Government objects to in 1950 is a raise from a 15% Bonus to a 20% Bonus, which was granted by the Board of Directors with J. Ray Waits not voting.

The increase of compensation of a 5% additional Bonus for 1950 paid to the President and General Manager of the plaintiff corporation was reasonable in view of the extent and scope of the employee's work, the employee's diligence and qualifications, the size and progress of the business, the salary paid in previous years, and the stock interest which the President held in the corporation.

There was no contradiction of the plaintiff or its witnesses and the defendant offered no testimony to attack the reasonableness of the compensation paid in the year 1950, to the plaintiff corporation's President and General Manager.

I find that there is in these cases no existence of a tax avoidance or tax evasion motive on the part of anyone.

### Opinion and Conclusions of Law

The Government takes the position that the insurance commissions were earned by Ray Waits Motors, Inc., the taxpayer, and were paid to J. Ray Waits as a disguised dividend, and that the insurance commissions are taxable in the first instance to Ray Waits Motors, Inc., the plaintiff corporation, and are also taxable to J. Ray Waits individually as a dividend from the Ray Waits Motors, Inc.

The commissions on the premiums were not earned by the plaintiff Ray Waits Motors, Inc., were never received by plaintiff Ray Waits Motors, Inc., and were not paid to J. Ray Waits as a dividend, but were earned solely by J. Ray Waits as an individual under his insurance agency agreement contract with Motors Insurance Corporation and were taxable in his individual income tax returns as having been earned and received by him as an individual under his contract. J. Ray Waits paid the taxes on these commissions for the years 1949 and 1950.

The Ray Waits Motors, Inc., a corporation, under the insurance laws of South Carolina, was not permitted during the years 1949 and 1950, to act as an agent for Motors Insurance Corporation. It was not authorized under its charter to engage in the insurance business.

J. Ray Waits had a right to retain his insurance agency with Motors Insurance Corporation, and was not forced to assign the same to the plaintiff Ray Waits Motors, Inc. when it was organized in 1947. J. Ray Waits had never assigned the contract to the plaintiff corporation and when the corporation was organized

J. Ray Waits made it clear to the stockholders and the directors that he was retaining his Motors Insurance Corporation contract as his individual property, and that the funds received therefrom would not be paid over to the plaintiff corporation, which was agreed to by the stockholders and directors of the plaintiff corporation.

In 1947, South Carolina established a separate and distinct Department of the State Government known as the "Department of Insurance", which was charged with the enforcement and execution of the laws relating to insurance, and changed many of the existing statutes for the better protection of the public.

Section 37–231, Code of Laws of South Carolina 1952, provides: "License required. No person shall act as agent for an insurance company unless a license so to do has been issued to him by the Commissioner."

Section 37–233, Code of Laws of South Carolina 1952, describes who is deemed agents of insurance companies and only refers to a person.

Section 37–234, Code of Laws of South Carolina 1952, requires that the applicant has to be vouched for by an insurance company to the Insurance Commissioner before the applicant could obtain a license as an insurance agent.

Section 37–235, Code of Laws of South Carolina 1952, provides for the fees to be paid for licenses.

Section 37–236, Code of Laws of South Carolina 1952, provides that the applicant must stand an examination as prescribed by the Commissioner, and the applicant had to be found competent and trustworthy to engage in the classification of insurance business in which he intends to engage.

Section 37–254, Code of Laws of South Carolina 1952, provides that no licensed agent shall pay directly or indirectly any commission, brokerage, or other valuable consideration to any non-resident or to any person not duly licensed to act as agent for the type of insurance involved.

█ It is true that the power of Congress to tax is not subject to State control, however, it is my opinion that the insurance laws of South Carolina are relevant in these cases in determining whether or not the insurance agency agreement made between J. Ray Waits and the Motors Insurance Corporation was a sham for tax purposes. Ordinarily a corporation and its stockholders are separate entities, whether the shares are divided among many or are owned by one. And the Commissioner of Internal Revenue has no authority to disregard corporate entities unless some evidence is produced to show that some sham for tax purposes or some fraud has been committed between the corporation and the taxpayer. I am satisfied that there was no fraud or sham for tax purposes in these cases. It is my opinion that the insurance laws of the State of South Carolina is one of the factors to be considered in arriving at this conclusion.

██ The next contention of the defendant is that the taxpayer J. Ray Waits did not earn the commissions but that the taxpayer Ray Waits Motors, Inc. earned the income. It is true that income must be taxed to those who earned the income, and that no anticipatory agreements may be made to prevent the vesting of the income in the earners. The plaintiff Ray Waits Motors, Inc. did not earn the income. I have arrived at this conclusion regardless of the insurance laws of the State of South Carolina. If I should take into consideration the insurance laws of the State of South Carolina, I would arrive at the same conclusion because the South Carolina Insurance laws prevent a corporation from qualifying as an insurance agent, and the taxpayer Ray Waits Motors, Inc. did not possess the legal capacity to earn the commissions as an insurance agent and had no legal capacity to receive them from J. Ray Waits under the statutory law of South Carolina. Furthermore, I recognize that if the corporation acted illegally, that illegal income would be taxable, but when I consider the testimony in this case, I can find no evidence that the taxpayer Ray Waits Motors, Inc. acted illegally.

Competent and credible testimony was offered by the plaintiff on the question of the reasonableness of the compensation paid to the President and General Manager of the plaintiff corporation for the year 1950. Plaintiff's witnesses were not contradicted and the defendant offered no testimony. The testimony was competent and unimpeached and the increase of the bonus from 15% to 20% was supported by the increase in the net profits of the business and other factors stated herein. The question of reasonableness of salary was fully discussed by me in the case of Ernest Burwell, Inc., v. U. S., D.C., 113 F.Supp. 26, from which decision the Government did not appeal.

The plaintiff has sustained the burden of proving by the greater weight of the evidence, the error of the Commissioner's assessment against the taxpayers with respect to the income taxes involved in these actions.

It is, therefore, my opinion that the plaintiff is entitled to judgment against the defendant in each of these cases for the amount of income taxes paid under protest, together with interest.

Orders for the entry of appropriate judgments may be presented accordingly, and

It is so ordered.