226 F.Supp. 136 (1964)
Petition of Dennis T. SHERIDAN, as owner and Sheridan Transportation Company, as bareboat charterer of the BARGE JAMES SHERIDAN for exoneration from or limitation of liability.
Annie ANDERTON, as Administratrix etc., and Salvatore Auricchio, as Administrator, etc., Libelants,
v.
Dennis T. SHERIDAN, Sheridan Transportation Company, Tug Management Corporation, Tug New York Company, etc., Respondents.
EDWARD CHAPPELL COMPANY, as owner of cargo, Libelant,
v.
MOTOR TUG CHRIS SHERIDAN and Tug New York Company, etc., Respondents.
EDWARD CHAPPELL COMPANY, as owner of cargo, Libelant,
v.
SHERIDAN TRANSPORTATION COMPANY and D. T. Sheridan, Respondents.
United States District Court S. D. New York.
February 11, 1964.
*137 Foley & Martin, New York City, for petitioners.
Hill, Rivkins, Louis & Warburton, New York City, for Edward Chappell Co., etc.
Standard, Weisberg, Harolds & Malament, New York City, for Annie Anderton.
Macklin, Hanan & McKernan, New York City, for respondent-impleaded, Reading Co.
RYAN, Chief Judge.
Libelants have filed exceptions to the report of the Special Commissioner, appointed to ascertain and appraise the value of the interest of the petitioners with respect to the limitation of liability fund to be surrendered by them.
It appears that on January 19, 1960, at about 11:50 P.M., while the Barge James Sheridan, and its cargo of coal was being towed by the Tug Chris Sheridan from Port Reading to New London, Connecticut, the barge turned to a side and sank, with the loss of two (2) lives and all its cargo.
A petition for exoneration from or limitation of liability in respect to the Barge James Sheridan was filed by Dennis T. Sheridan, owner, and Sheridan Transportation Company, bareboat charterer of the barge.
The Special Commissioner, following a full hearing, held that the petitioners' value of interest should be limited to their interest in the Barge James Sheridan. To this ruling the libelants except. It is their position that the Commissioner should have included the value of the Tug Chris Sheridan, which was part of the flotilla. The libelants also contend that the tug and barge, though operating under different named owners, were in fact controlled and operated by petitioner, Dennis T. Sheridan. The libelants urge this court to pierce "the corporate veil" surrounding Tug New York Corporation and include in the limitation fund the value not only of the barge as recommended by the Commissioner but also the value of the tug.
From the testimony adduced at the hearing, it appears that Dennis T. Sheridan, the petitioner, has been in the marine transportation business for approximately fifty-one years. Previous to 1937, he operated as an "individual" but in that year, he incorporated Sheridan Transportation Company to manage and conduct his marine transportation business. He retained control of this corporation through stock ownership and assumed the office of president.
Some years later, Sheridan Transportation Company divested itself of the management and operation of tugboats. A separate corporation, Tug Management Corporation, was organized to operate the tugboat phase of the marine business. Dennis Sheridan was also named president of this corporation, and was the owner of seven shares of stock (original capitalization 100 shares).
Thereafter in 1944 Tug New York Corporation was organized with a capitalization of one thousand shares. Dennis Sheridan was the owner of three hundred and fifty shares and was named president. Tug New York Corporation owned the Tugboat "Chris Sheridan" which was part of the flotilla herein.
By a charter party agreement entered into on February 1, 1951, Tug Management Corporation undertook the management of Tug Chris Sheridan. This included supplying food and other supplies together with management of the crews' wages and all operational expenses. In return Tug Management was to receive 5% of all cargo receipts after deducting the aforementioned operational expenses.
The Barge, James Sheridan, which sank on January 19, 1960, was originally purchased by Dennis T. Sheridan for $51,000 acting on behalf of Sheridan Barge Corporation, an operation owned, operated and controlled by petitioner, Dennis T. Sheridan, and various friends, *138 relatives and employees. At a later date, this corporation was liquidated and the barge, James Sheridan, was transferred outright to petitioner, Dennis Sheridan. Subsequently, the barge was transferred to an association known as Barge Blanche Sheridan, Joint Venture.
No formal agreement or recording of this transferral to Barge Blanche Sheridan, Joint Venture, was ever filed. Accordingly, Dennis Sheridan is still the owner of record.
At the time of the sinking, Barge James Sheridan was being operated and managed by Sheridan Transportation Company under bareboat charter with Barge Blanche Sheridan, Joint Venture.
This presents the corporate set-up as it existed on the night of January 19, 1960. It should be noted here, that these various corporate entities all operated from the same office, in Philadelphia.
An owner, to avail himself of limitation of liability under the statutes, must deposit the value of or surrender his interest for the benefit of claimants.
46 U.S.C.A. § 183 provides in part:
"The liability of the owner of any vessel * * * shall not * * exceed the amount or value of the interest of such owner in such vessel, and her freight then pending."
46 U.S.C.A. § 185 provides in part:
"The vessel owner * * * (a) shall deposit with the court, for the benefit of claimants, a sum equal to the amount or value of the interest of such owner in the vessel and freight * * * or (b) at his option shall transfer * * * his interest in the vessel and freight * * *."
In this proceeding, the libelants seek to include in the limitation fund the value of the Tug Chris Sheridan as well as the petitioners' declared interest in the Barge James Sheridan. The libelants contend that Dennis T. Sheridan is the actual owner of both the tug and barge, in suit. They maintain his ownership in the Tug is veiled by a corporate entity whose existence is a sham and should be disregarded. Libelants also claim that the barge and tug here were operating in such manner that a joint venture was in existence and as such a "single vessel" theory is applicable with a resulting joint ownership pro hac vice, citing In re O'Donnell, 2 Cir., 26 F.2d 334.
We shall consider the corporate entity question first.
Courts on many occasions have been asked to pierce the corporate form to prevent an injustice. Various theories have been evolved and rules laid down to accomplish this purpose. In United States v. Milwaukee Refrigerator Transit Co., C.C., 1905, 142 F. 247, the Court stated, at page 255:
"If any general rule can be laid down, in the present state of authority, it is that a corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears; but, when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons."
In Mull v. Colt Co., 31 F.R.D. 154 (D. C.1962), the court noted at page 165:
"In essence, the rule to be applied and the standard by which a given set of facts are to be judged is one of equity and justice. `What the formula comes down to, once shorn of verbiage about control, instrumentality, agency and corporate entity, is that liability is imposed to reach an equitable result.' Latty, Subsidiaries and Affiliated Corporations 191 (1936);".
Libelants charge that Dennis T. Sheridan so organized and incorporated his marine enterprise so as to insulate himself from the responsibilities of liability. This, of course, standing by itself, is no basis for invading a corporate entity. Indeed, it has been stated that:
"The organization of a corporation for the avowed purpose of avoiding *139 personal responsibility does not of itself, however, justify disregard of the corporate entity." Fletcher Cyclopedia Corporations Vol. 1, Ch. 2, sec. 41.2 pp. 181.
There can be no doubt that Dennis T. Sheridan had a vast sphere of influence in the organization and control of the several corporations. The board of directors of the various corporations are composed of friends, relatives and employees who have aided and assisted him in his business over the years. Similar influence and control by the founder of a business is not uncommon. In Lowendahl v. Baltimore & O. R. Co., 247 App. Div. 144, 287 N.Y.S. 62, affirmed 272 N. Y. 360, 6 N.E.2d 56, the court, speaking of control over a corporation, wrote:
"Control through mere ownership of a majority or of even all the capital stock and the use of the power incident thereto to elect officers and directors will not in and of itself predicate liability. * * * (cases cited). Liability must depend upon a domination and control so complete that the corporation may be said to have no will, mind, or existence of its own, and to be operated as a mere department of the business of the stockholder. Berkey v. Third Avenue R. Co. (1926) 244 N.Y. 84, 94, 155 N.E. 58, 61, 50 A.L.R. 599; * * * (other cases cited)."
With respect to Tug New York Corporation, we are not prepared to hold that the petitioner exercised such complete domination over its affairs as described above. The records before us indicate that the petitioner owned three hundred and fifty shares of a total capitalization of one thousand. While he did occupy the office of president, authority to sign checks was shared with Bushey & Sons Inc., which was also owner of the three hundred and fifty shares.
Libelants point to the fact that all these corporations operate from the same offices and contend that they did so with an apparent disregard of the corporate distinctions. Often, however, closely held corporations are operated in this manner.
We find upon the record and conclude that the libelants have not established by a preponderance of evidence all the elements prerequisite for a disregard of the corporate entity of Tug New York Corporation (See Lowendahl v. Baltimore & O. R. Co., supra).
We come to consider the second contention of libelants, namely, whether there arose on this trip a joint operation sufficient to constitute joint ownership.
Here, libelants cite In re O'Donnell, 2 Cir., 26 F.2d 334. While there is language which seems to support libelants, we note that the primary problem before the court was not a limitation of liability question but an exoneration from liability claimed under the Harter Act. Judge Hand, holding that a "single vessel" situation had existed between tug and barge and, therefore, both entitled to exemption from liability wrote, at page 336:
"Finally, it is argued that the appellees, to limit their liability, must surrender, not only the tug, but the barges, each being by hypothesis a constituent part of the `vessel' exonerated. We agree that, if the tug and barges are to be deemed one vessel under the Harter Act, they must be equally so considered under the limitation statute. The last was decided in The Columbia, 73 F. 226 (C.C.A. 9), a case expressly approved in Sacramento Nav. Co. v. Salz [273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663], and indeed used as a basis for the result there reached. There can be no question that, if both vessels had been owned in common, both would have had to be surrendered here. But the limitation statute requires a person liable for a ship's tort to surrender no interest in her beyond his own. On the contrary, it expressly provides that he shall be exonerated upon surrendering whatever that interest may be. U.S.Code, title 46, §§ 183, 189 (46 USCA §§ 183, 189; Comp. *140 St. §§ 8021, 8028). Thus there is no inconsistency in at once saying that the two vessels are one, and in allowing limitation upon surrender of the tug."
There have been many cases cited wherein the owner who has employed more than one of his vessels to the performance of a contract has been required to put up his interest in all such vessels in order to succeed on a petition to limit his liability; see Standard Dredging Co. et al. v. Kristiansen, 2 Cir., 67 F.2d 548, Petition of Lake Tankers Corporation, D.C., 132 F.Supp. 504. The basis for these holdings has been common ownership and engagement in a common enterprise.
Where common ownership can be sustained either through actual ownership of record or by legal fiction, the owner so judged is required to deposit or surrender his value of interest in all vessels concerned. In the instant suit, the tug and barge were not in the same relation as existed in the O'Donnell case. The tug was owned in a corporate name, the barge by an individual. There was no contract between barge and tug as existed in the O'Donnell case, where the court held "it is enough if the two owners make a joint contract of carriage with the shipper, to the performance of which each lends a necessary vessel. * * * this appears to us to be equivalent to a joint ownership in both vessels pro hac vice."
In the instant suit, Tug New York Corporation merely furnished towing, it did not have authority to accept or reject any undertaking by the barge as in the O'Donnell situation. Expenses and profits of the operation were not shared.
Common ownership has not been shown and, accordingly, the petition of Dennis T. Sheridan should be limited to his interest in the barge alone.
Libelants have also raised some question concerning the fact that hull insurance funds received by the owner of the barge should be included in the fund. We disagree, See The City of Norwich, 1886, 118 U.S. 468, 6 S.Ct. 1150, 30 L.Ed. 134.
Commissioner's report is confirmed; his requested compensation appears fair and reasonable; it is allowed. The issue as to the seaworthiness of the barge is, of course, reserved for further trial.
Let a decree be submitted on five (5) days notice of settlement.