**DeWITT TRUCK BROKERS, INC., Appellee,**

v.

**W. RAY FLEMMING FRUIT COMPANY and W. Ray Flemming, Appellants.**

No. 75–1653.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 4, 1975.

Decided May 13, 1976.

---

8. 329 F.Supp. at 1247–8, *supra.*

9. 339 F.Supp. at 651.

W. Ray Berry, Columbia, S. C., for appellants.

Henry H. Taylor, West Columbia, S. C. (Dent, Kirkland, Taylor & Wilson, West Columbia, S. C., on brief), for appellee.

Before RUSSELL and WIDENER, Circuit Judges, and THOMSEN, Senior District Judge.*

DONALD RUSSELL, Circuit Judge:

In this action on debt, the plaintiff seeks, by piercing the corporate veil under the law of South Carolina, to impose individual liability on the president of the indebted corporation individually.[1] The District Court, making findings of fact which may be overturned only if clearly erroneous, pierced the corporate veil and imposed individual liability. The individual defendant appeals. We affirm.

At the outset, it is recognized that a corporation is an entity, separate and distinct from its officers and stockholders, and that its debts are not the individual indebtedness of its stockholders. This is expressed in the presumption that the corporation and its stockholders are separate and distinct. *Fishman v. State* (1973), 128 Ga.App. 505, 197 S.E.2d 467, 473. And this oft-stated principle is equally applicable, whether the corporation has many or only one stockholder.[2] But this concept of separate entity is merely a legal theory, "intro-duced for purposes of convenience and to subserve the ends of justice,"[3] and the courts "decline to recognize [it] whenever recognition of the corporate form would extend the principle of incorporation 'beyond its legitimate purposes and [would] produce injustices or inequitable consequences.'" *Krivo Industrial Supp. Co. v. National Distill. & Chem. Corp.* (5th Cir. 1973), 483 F.2d 1098, 1106, modified factually 490 F.2d 916; *Sell v. United States* (10th Cir. 1964), 336 F.2d 467, 472; *Stone v. Eacho* (4th Cir. 1942), 127 F.2d 284, 288-9, cert. denied, 317 U.S. 635, 63 S.Ct. 54, 87 L.Ed. 512 (1942); *Jennings v. Automobile Sales Co.* (1917), 107 S.C. 514, 515, 93 S.E. 188. Accordingly, "in an appropriate case and in furtherance of the ends of justice," the corporate veil will be pierced and the corporation and its stockholders "will be treated as identical." 18 Am.Juris.2d at 559.

This power to pierce the corporate veil, though, is to be exercised "reluctantly"[4] and "cautiously"[5] and the burden of establishing a basis for the disregard of the corporate fiction rests on the party asserting such claim. *Coryell v. Phipps* (5th Cir. 1942), 128 F.2d 702, 704, aff., 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363 (1943); *Aamco Automatic Transmissions, Inc. v. Tayloe* (E.D.Pa.1973), 368 F.Supp. 1283, 1299; *Haynes v. Champagne Tile Cor-*

---

* Sitting by designation.

1. The corporate defendant, it is conceded, is not responsive to judgment.

2. *Quinn v. Butz* (1975), 166 U.S.App.D.C. 363, 510 F.2d 743, 757; *El Salto, S.A. v. PSG Co.* (9th Cir. 1971), 444 F.2d 477, 483, cert. denied, 404 U.S. 940, 92 S.Ct. 273, 30 L.Ed.2d 253 (1971); *Maule Industries v. Gerstel* (5th Cir. 1956), 232 F.2d 294, 297; *Iron City S. & G. Div. of McDonough Co. v. West Fork Tow. Co.* (N.D.W.Va.1969), 298 F.Supp. 1091, 1098-9, rev. on other grounds, 4 Cir., 440 F.2d 958; *Brown v. Margrande Compania Naviera, S.A.* (E.D.Va.1968), 281 F.Supp. 1004, 1005-6; *Winand v. Case* (D.Md.1957), 154 F.Supp. 529, 539-40; *Ray Waits Motors v. United States* (E.D.S.C.1956), 145 F.Supp. 269, 274; *Levenstein v. Sapiro* (Fla.1973), 279 So.2d 858, 860; *Scott-Douglas Corp. v. Greyhound Corp.* (Del. Super.1973), 304 A.2d 309, 314; *Fishman v. State, supra,* 197 S.E.2d at 473.

3. 18 Am.Juris.2d § 14, p. 559; Annotation, 46 A.L.R.3d 430.
   The classic statement of the principle was set forth by Judge Sanborn many years ago in *United States v. Milwaukee Refrigerator Transit Co.* (C.C.Wis.1905), 142 F. 247, to the effect that there has been a growing tendency upon the part of the courts to disregard corporate entity and to treat the stockholders thereof as an association of individuals when the interests of justice are served.

4. *Pardo v. Wilson Line of Washington, Inc.* (1969), 134 U.S.App.D.C. 249, 414 F.2d 1145, 1149.

5. *Country Maid, Inc. v. Haseotes* (E.D.Pa.1969), 299 F.Supp. 633, 637.

*poration* (E.D.La.1964), 228 F.Supp. 157, 159.

■ The circumstances which have been considered significant by the courts in actions to disregard the corporate fiction have been "rarely articulated with any clarity." *Swanson v. Levy* (9th Cir. 1975), 509 F.2d 859, 861–2. Perhaps this is true because the circumstances "necessarily vary according to the circumstances of each case,"[6] and every case where the issue is raised is to be regarded as *"sui generis* [to] * * * be decided in accordance with its own underlying facts."[7] Since the issue is thus one of fact, its resolution "is particularly within the province of the trial court"[8] and such resolution will be regarded as "presumptively correct and [will] be left undisturbed on appeal unless it is clearly erroneous."[9]

■ Contrary to the basic contention of the defendant, however, proof of plain fraud is not a necessary element in a finding to disregard the corporate entity. This was made clear in *Anderson v. Abbott* (1944), 321 U.S. 349, 362, 64 S.Ct. 531, 538, 88 L.Ed. 793, *reh. denied,* 321 U.S. 804, 64 S.Ct. 845, 88 L.Ed. 1090 (1944), where the Court, after stating that "fraud" has often been found to be a ground for disregarding the principle of limited liability based on the corporate fiction, declared:

"* * * The cases of fraud make up part of that exception [which allow the corporate veil to be pierced, citing cases]. *But they do not exhaust it.* An obvious inadequacy of capital, measured by the nature and magnitude of the corporate

undertaking, has frequently been an important factor in cases denying stockholders their defense of limited liability." (Italics added.)

This holding was recently restated in *National Marine Service, Inc. v. C. J. Thibodeaux & Company* (5th Cir. 1974), 501 F.2d 940, 942:

"* * * Although there is no doubt that fraud is a proper matter of concern in suits to disregard corporate fictions, it is not a prerequisite to such a result, especially when there is gross undercapitalization or complete domination of the corporate entity under scrutiny."

In *Kirvo Industrial Supp. Co. v. National Distill. & Chem. Corp., supra,* 483 F.2d at 1106–7, the Court expressed the same thought:

"* * * the theory of liability under the 'instrumentality' doctrine does not rest upon intent to defraud. It is an equitable doctrine that places the burden of the loss upon the party who should be responsible."[10]

Nor is there any basis for assuming the rule in South Carolina, which is controlling in this diversity case, to be different from the general rule declaring fraud not to be a necessary predicate for piercing the corporate veil. In fact, the South Carolina court has stated the doctrine for disregarding the corporate entity in terms similar to the general rule earlier phrased. Thus, in *Long v. Carolina Baking Co., Inc.* (1939), 190 S.C. 367, 377, 3 S.E.2d 46, 50, it held that, while "[t]he corporate fiction and the rules sur-

---

**6.** *Auer v. Frank* (1964), 227 Cal.App.2d 396, 38 Cal.Rptr. 684, 8 A.L.R.3d 1108, 1118; *Aetna Casualty and Surety Company v. Stover* (8th Cir. 1964), 327 F.2d 288, 291.

**7.** *Brown Bros. Equipment Co. v. State* (1974), 51 Mich.App. 448, 215 N.W.2d 591.
　To the same effect is *Hayes v. Champagne Tile Corporation, supra,* 228 F.Supp. at 159.

**8.** *Auer v. Frank, supra,* 227 Cal.App.2d 396, 38 Cal.Rptr. 684; *Stark v. Coker* (1942), 20 Cal.2d 839, 129 P.2d 390, 394.

**9.** *G. M. Leasing Corp. v. United States* (10th Cir. 1975), 514 F.2d 935, 939, U.S. appeal pending; *George W. Bennett Bryson & Company, Ltd. v. Norton Lilly & Co., Inc.* (5th Cir. 1974),

498 F.2d 328, 329, *rehearing denied,* 502 F.2d 1045; *Plumbers & Fitters, Local 761 v. Matt J. Zaich Const. Co.* (9th Cir. 1969), 418 F.2d 1054, 1058; *TSS Sportswear, Limited v. Swank Shop (Guam), Inc.* (9th Cir. 1967), 380 F.2d 512, 518.

**10.** To the same effect are *Wyoming Construction Co. v. Western Casualty & S. Co.* (10th Cir. 1960), 275 F.2d 97, 103–4, *cert. denied,* 362 U.S. 976, 80 S.Ct. 1061, 4 L.Ed.2d 1011 (1960); *Shamrock Oil and Gas Co. v. Ethridge* (D.Colo. 1958), 159 F.Supp. 693, 697; *C. H. Little & Co. v. Gay Apparel Corp.* (S.D.N.Y.1952), 108 F.Supp. 762, 765; *Harris v. Wagshal* (D.C.App. 1975), 343 A.2d 283, 287–8.

rounding it have been of inestimable service in the affairs of business, * * * they must be applied in such a manner as to promote justice, not to hinder or defeat it." It is true that in *Parker Peanut Company v. Felder* (1942), 200 S.C. 203, 215, 20 S.E.2d 716, 720, in which the corporate fiction was disregarded, fraud was found to exist but this was in the context of a general statement "that the corporate fiction may be disregarded in a proper case," thereby clearly intimating that the application of the doctrine was not restricted to cases of fraud, though it is likely, as the Court declared in *Abbott,* fraud will provide the most common illustration of the application of the doctrine. That plain fraud is not a prerequisite to relief under the doctrine as followed in South Carolina seems clear from the decision in *Jennings v. Automobile Sales Co.* (1917), 107 S.C. 514, 516, 93 S.E. 188, where the Court upheld the piercing of the corporate veil on the "alter ego" theory without any finding of specific fraud. It is safe then to assume that the South Carolina law is in accord with the general rule in this area.

■ On the other hand, equally as well settled as is the principle that plain fraud is not a necessary prerequisite for piercing the corporate veil is the rule that the mere fact that all or almost all of the corporate stock is owned by one individual or a few individuals, will not afford sufficient grounds for disregarding corporateness.[11] But when substantial ownership of all the stock of a corporation in a single individual is combined with other factors clearly supporting disregard of the corporate fiction on grounds of fundamental equity and fairness, courts have experienced "little difficulty" and have shown no hesitancy in applying what is described as the "alter ego" or "instrumentality" theory in order to cast aside the corporate shield and to fasten liability on the individual stockholder. *Iron City S. & G. Div. of McDonough Co. v. West Fork Tow. Corp., supra,* 298 F.Supp. at 1098.[12]

■ But, in applying the "instrumentality" or "alter ego" doctrine, the courts are concerned with reality and not form, with how the corporation operated and the individual defendant's relationship to that operation. *Collins v. United States* (S.D.Ga. 1974), 386 F.Supp. 17, 20, aff'd, 5 Cir., 514 F.2d 1282. One court has suggested that courts should abjure "the mere incantation of the term 'instrumentality'" in this context and, since the issue is one of fact, should take pains to spell out the specific factual basis for its conclusion. *Kirvo Industrial Supp. Co. v. National Distill. & Chem. Corp., supra,* 483 F.2d at 1103. And the authorities have indicated certain facts which are to be given substantial weight in this connection. One fact which all the authorities consider significant in the inquiry, and particularly so in the case of the one-man or closely-held corporation, is whether the corporation was grossly undercapitalized for the purposes of the corporate undertaking. Henn, *Law of Corporations* 2d Ed. (1970), at 257; *Anderson v. Abbott, supra,* 321 U.S. at 362, 64 S.Ct. 531; *Stone v. Eacho, supra,* 127 F.2d at 288; *Luckenback S.S. Co. v. W. R. Grace & Co.* (4th Cir. 1920), 267 F. 676, 681, *cert. denied,* 254 U.S. 644, 41 S.Ct. 14, 65 L.Ed. 454 (1920); *Francis O. Day Co. v. Shapiro* (1959), 105 U.S. App.D.C. 392, 267 F.2d 669, 673; *Arnold v. Phillips* (5th Cir. 1941), 117 F.2d 497, 502, *cert. denied,* 313 U.S. 583, 61 S.Ct. 1102, 85 L.Ed. 1539 (1940); *Puamier v. Barge BT 1793, supra,* 395 F.Supp. at 1039, n. 10; *Mull v. Colt Co.* (S.D.N.Y.1962), 31 F.R.D. 154, 163; *Kilpatrick Bros., Inc. v. Poynter* (1970), 205 Kan. 787, 473 P.2d 33, 40; *North*

11. See cases cited in note 2.

12. In *Iron City,* the Court said at p. 1098:
    "The Court recognizes the principle that ownership of all or almost all of the shares of a corporation by one individual does not afford sufficient ground for disregarding the corporate entity, *Ruberoid Co. v. North Tex-* *as Concrete Co.,* 193 F.2d 121 (5th Cir. 1951), nevertheless, where such ownership is combined with the other factors involved in this case, particularly the inadequate capitalization, see 63 A.L.R.2d 1951, we find little difficulty in holding that West Fork Towing Corporation was the 'alter ego' of Paul Pitrolo."

*Arlington Med. Bldg., Inc. v. Sanchez Const. Co.* (1970), 86 Nev. 515, 471 P.2d 240, 244; *Automotriz Del Golfo De Cal. v. Resnick* (1957), 47 Cal.2d 792, 306 P.2d 1, 63 A.L. R.2d 1042, 1048, with annotation;[13] Gillespie, *The Thin Corporate Line: Loss of Limited Liability Protection,* 45 N.D.L.Rev. 363, 377–8 (1969). And, "[t]he obligation to provide adequate capital begins with incorporation and is a continuing obligation there-after * * * during the corporation's operations." *See* Gillespie, *supra* ; Dix, *Adequate Risk Capital,* 52 Nw.U.L.Rev. 478, 494 (1958). Other factors that are emphasized in the application of the doctrine are failure to observe corporate formalities,[14] non-payment of dividends,[15] the insolvency of the debtor corporation at the time,[16] siphoning of funds of the corporation by the dominant stockholder,[17] non-functioning of other offi-

13. In *Abbott,* Mr. Justice Douglas said, 321 U.S. at 362, 64 S.Ct. at 538:

"* * * An obvious inadequacy of capital, measured by the nature and magnitude of the corporate undertaking, has frequently been an important factor in cases denying stockholders their defense of limited liability."

In *Mull, supra,* 31 F.R.D. at 163, the Court quoted from Ballentine, *Corporations,* 303 (rev. ed. 1946):

"* * * It is coming to be recognized as the policy of the law that shareholders should in good faith put at the risk of the business unincumbered capital reasonably adequate for its prospective liabilities. If the capital is illusory or trifling compared with the business to be done and the risks of loss, this is a ground for denying the separate entity privilege."

In Note, *Disregard of the Corporate Entity: Contract Claims,* 28 Ohio S.L.J. 441 (1967), the author argues that under capitalization as a factor in determining whether to pierce the corporate veil should be inapplicable in contract cases; *cf., however,* Note, *Limited Liability: A Definite Judicial Standard for the Inadequate Capitalization Problem,* 47 Temple L.Q. 32 (1974). The reasoning is that when one extends credit or makes any other contractual arrangement with a corporation, it is to be assumed he acquaints himself with the corporation's capitalization and contracts on such basis, and not on the individual credit of the dominant stockholder. In this case, however, that reasoning would be inapplicable, since the plaintiff did not rely on the corporation's capitalization but received an assurance from Flemming of personal liability.

14. *House of Koscot Dev. Corp. v. American Line Cosmetics, Inc.* (5th Cir. 1972), 468 F.2d 64, 66–7 ("* * * Turner ignored normal corporate formalities * * *"); *Lakota Girl Scout C., Inc. v. Havey Fund-Rais. Man., Inc.* (8th Cir. 1975), 519 F.2d 634, 638 ("* * * corporate formalities [were] not followed * * *"); *Dudley v. Smith* (5th Cir. 1974), 504 F.2d 979, 982 ("[C]orporate formalities were seldom adhered to"); *TSS Sportswear, Limited v. Swank Shop (Guam), Inc.* (9th Cir. 1967), 380 F.2d 512, 516 ("* * * never bothered to go through the regular corporate processes * * *"); *Arnold v. Browne* (1972), 27 Cal.App.3d 386, 103 Cal.Rptr. 775; *Harris v. Wagshal* (D.C.App.1975), *supra,* 343 A.2d at 287. While disregard of corporate formalities is a circumstance to be considered, it is generally held to be insufficient in itself, without some other facts, to support a piercing of the corporate veil. *Contractors Heating and Supply Co. v. Scherb* (1967), 163 Colo. 584, 432 P.2d 237, 239; *Revere Press, Inc. v. Blumberg* (1968), 431 Pa. 370, 246 A.2d 407, 411; *North Arlington Med. Bldg., Inc. v. Sanchez Const. Co., supra,* 471 P.2d at 243.

*Cf., Zubik v. Zubik* (3d Cir. 1967), 384 F.2d 267, 271, *cert. denied,* 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968), n. 4, where the Court stated that "[i]n the context of an attempt by an outside party to pierce the corporate veil of such a closely-held corporation, the informalities are considered of little consequence, e. g., *In re Sheridan's Petition,* 226 F.Supp. 136, 139 (S.D.N.Y.1964); *Hellenic Lines, Limited v. Winkler,* 249 F.Supp. 771, 773, 776 (S.D.N.Y.1966)." The two cases cited in support do not entirely support the broad conclusion stated, however. In *Winkler,* the Court emphasized that the corporation "did observe some of the corporate formalities" (p. 777) and that "no funds oscillated at Winkler's will between him and" the corporation and "Winkler did not mislead plaintiff by personal guarantees * * *" (p. 776). In *Sheridan,* there was no real reference to corporate formalities except for the fact that the several corporations occupied the same offices. This case is criticized in Gillespie, *supra,* at 380–2.

*See, however, Harrison v. Puga* (1971), 4 Wash.App. 52, 480 P.2d 247, 254, where the Court said that if the defendants disregarded the corporate formalities, they could hardly complain if the court did likewise.

15. *Schoenberg v. Benner* (1967), 251 Cal. App.2d 154, 59 Cal.Rptr. 395.

16. *TSS Sportswear, Limited v. Swank Shop (Guam), Inc., supra.*

17. *Chatterley v. Omnico, Inc.* (1971), 26 Utah 2d 88, 485 P.2d 667, 670.

cers or directors,[18] absence of corporate records,[19] and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders. The conclusion to disregard the corporate entity may not, however, rest on a single factor, whether undercapitalization, disregard of corporation's formalities, or what-not, but must involve a number of such factors; in addition, it must present an element of injustice or fundamental unfairness. But undercapitalization, coupled with disregard of corporate formalities, lack of participation on the part of the other stockholders, and the failure to pay dividends while paying substantial sums, whether by way of salary or otherwise, to the dominant stockholder, all fitting into a picture of basic unfairness, has been regarded fairly uniformly to constitute a basis for an imposition of individual liability under the doctrine.[20]

A recent case illustrative of the application of some of those factors in finding warrant to disregard the corporate shield is *G. M. Leasing Corp. v. United States, supra,* 514 F.2d at 935. There, the District Court found as a fact that the corporation was not the "alter ego" of the defendant. On appeal, this finding was held to be "clearly erroneous" and individual liability was imposed. In reaching this conclusion, the Court found that the defendant had "substantial, if not exclusive, control over appellee;" that the other directors "were nothing more than figureheads" who "attended no directors meetings, and were paid no salaries," and that there were no "minutes of stockholders' meetings."[21]

If these factors, which were deemed significant in other cases concerned with this same issue, are given consideration here, the finding of the District Court that the corporate entity should be disregarded was not clearly erroneous. Certainly the corporation was, in practice at least, a close, one-man corporation from the very beginning. Its incorporators were the defendant Flemming, his wife and his attorney. It began in 1962 with a capitalization of 5,000 shares, issued for a consideration of one dollar each. In some manner which Flemming never made entirely clear, approximately 2,000 shares were retired. At the times involved here Flemming owned approximately 90% of the corporation's outstanding stock, according to his own testimony, though this was not verified by any stock records. Flemming was obscure on who the other stockholders were and how much stock these other stockholders owned, giving at different times conflicting statements as to who owned stock and how much. His testimony on who were the officers and directors was hardly more direct. He testified that the corporation did have one other director, Ed Bernstein, a resident of New York. It is significant, however, that, whether Bernstein was nominally a director or not, there were no corporate records of a real directors' meeting in all the years of the corporation's existence and Flemming conceded this to be true. Flemming countered this by testifying that Bernstein traveled a great deal and that his contacts with Bernstein were generally by telephone. The evidence indicates rather clearly that Bernstein was, like the directors in *G. M. Leasing,* "nothing more

---

**18.** *Financial Counsellors, Inc. v. Securities and Exchange Commission* (2d Cir. 1964), 339 F.2d 196, 197.

If the individual defendant has guaranteed the loans of the corporation or has co-signed with it, this fact is evaluated in this connection. The reason for this is obvious. The requirement that the individual defendant indorse or co-sign together with the willingness of the individual defendant to do so is evidence of the financial fragility of the corporation. Similarly, where the individual operator has used as persuasion upon the creditor that he stood person-

ally behind the corporation and would see that its indebtedness was paid has been found in some cases to justify holding the individual defendant to his promise. *See* 46 A.L.R.3d at 437–8, and infra, pp. 22–23.

**19.** *Lakota Girl Scout C., Inc. v. Havey Fund-Rais. Man., Inc., supra,* 519 F.2d at 638.

**20.** *Delchamps, Inc. v. Borkin* (5th Cir. 1970), 429 F.2d 417, 418.

**21.** *See* 514 F.2d 939, 940.

than [a] figurehead[s]," who had "attended no directors meeting," and even more crucial, never received any fee or reimbursement of expenses or salary of any kind from the corporation.

The District Court found, also, that the corporation never had a stockholders' meeting. This accorded with Flemming's own testimony when originally deposed. Later, it is true, he sought to disown this admission and produce minutes of five stockholders' meetings, which incidentally were identical in form. He would explain his earlier admission by saying he had misunderstood a simple question such as whether the corporation had ever had a stockholders' meeting. The trial judge, who observed the witnesses and their demeanor on the stand, found the defendant's disavowal of his earlier testimony in this regard unconvincing and concluded that his earlier admission was correct. It is thus clear that corporate formalities, even rudimentary formalities, were not observed by the defendant.

Beyond the absence of any observance of corporate formalities is the purely personal matter in which the corporation was operated. No stockholder or officer of the corporation other than Flemming ever received any salary, dividend, or fee from the corporation, or, for that matter, apparently exercised any voice in its operation or decisions. In all the years of the corporation's existence, Flemming was the sole beneficiary of its operations and its continued existence was for his exclusive benefit. During these years he was receiving from $15,000 to $25,000 each year from a corporation, which, during most of the time, was showing no profit and apparently had no working capital. Moreover, the payments to Flemming were authorized under no resolution of the board of directors of the corporation, as recorded in any minutes of a board meeting. Actually, it would seem that Flemming's withdrawals varied with what could be taken out of the corporation at the moment: If this amount were $15,000, that was Flemming's withdrawal; if it were $25,000, that was his withdrawal.

To summarize: The District Court found, and there was evidence to sustain the findings, that there was here a complete disregard of "corporate formalities" in the operation of the corporation, which functioned, not for the benefit of all stockholders, but only for the financial advantage of Flemming, who was the sole stockholder to receive one penny of profit from the corporation in the decade or more that it operated, and who made during that period all the corporate decisions and dominated the corporation's operations.

That the corporation was undercapitalized, if indeed it were not without any real capital, seems obvious. Its original stated "risk capital" had long since been reduced to approximately $3,000 by a reduction in the outstanding capital, or at least this would seem to be inferable from the record, and even this, it seems fair to conclude, had been seemingly exhausted by a long succession of years when the corporation operated at no profit. The inability of the corporation to pay a dividend is persuasive proof of this want of capital. In fact, the defendant Flemming makes no effort to refute the evidence of want of any capital reserves on the part of the corporation. It appears patent that the corporation was actually operating at all times involved here on someone else's capital. This conclusion follows from a consideration of the manner in which Flemming operated in the name of the corporation during the year when plaintiff's indebtedness was incurred.

The corporation was engaged in the business of a commission agent, selling fruit produce for the account of growers of farm products such as peaches and watermelons in the Edgefield, South Carolina, area. It never purported to own such products; to repeat, it (always acting through Flemming) sold the products as agent for the growers. Under the arrangement with the growers, it was to remit to the grower the full sale price, less any transportation costs incurred in transporting the products from the growers' farm or warehouse to the purchaser and its sales commission. An integral part of these collections was, as stated,

represented by the plaintiff's transportation charges. Accordingly, during the period involved here, the corporation had as operating funds seemingly only its commissions and the amount of the plaintiff's transportation charges, for which the corporation had claimed credit in its settlement with its growers. At the time, however, Flemming was withdrawing funds from the corporation at the rate of at least $15,000 per year; and doing this, even though he must have known that the corporation could only do this by withholding payment of the transportation charges due the plaintiff, which in the accounting with the growers Flemming represented had been paid the plaintiff. And, it is of some interest that the amount due the plaintiff for transportation costs was approximately the same as the $15,000 minimum annual salary the defendant testified he was paid by the corporation. Were the opinion of the District Court herein to be reversed, Flemming would be permitted to retain substantial sums from the operations of the corporation without having any real capital in the undertaking, risking nothing of his own and using as operating capital what he had collected as due the plaintiff. Certainly, equity and fundamental justice support individual liability of Flemming for plaintiff's charges, payment for which he asserted in his accounting with the growers that he had paid and for which he took credit on such accounting. This case patently presents a blending of the very factors which courts have regarded as justifying a disregard of the corporate entity in furtherance of basic and fundamental fairness.

Finally, it should not be overlooked that at some point during the period when this indebtedness was being incurred—whether at the beginning or at a short time later is not clear in the record—the plaintiff became concerned about former delays in receipt of payment for its charges and, to allay that concern, Flemming stated to the plaintiff, according to the latter's testimony as credited by the District Court, that "he (i. e., Flemming) would take care of [the charges] personally, if the corporation failed to do so * * *." On this assurance, the plaintiff contended that it continued to haul for the defendant. The existence of this promise by Flemming is not disputed. Flemming simply would absolve himself of any obligation thereunder because the plaintiff has sued him individually instead of waiting patiently for the defendant to pay it at the latter's pleasure, if ever—a rather lame excuse, since it was obvious that a legal action was the only recourse the plaintiff had to make Flemming abide by his promise. This assurance was given for the obvious purpose of promoting the *individual* advantage of Flemming. This follows because the only person who could profit from the continued operation of the corporation was Flemming. When one, who is the sole beneficiary of a corporation's operations and who dominates it, as did Flemming in this case, induces a creditor to extend credit to the corporation on such an assurance as given here, that fact has been considered by many authorities sufficient basis for piercing the corporate veil. *Weisser v. Mursam Shoe Corporation* (2d Cir. 1942), 127 F.2d 344, 145 A.L.R. 467; *Quaid v. Ratkowsky* (1918), 183 A.D. 428, 170 N.Y.S. 812, *aff'd,* 224 N.Y. 624, 121 N.E. 887. The only argument against this view is bottomed on the statute of frauds. *See Mid-Atlantic Appliances v. Morgan* (1952), 194 Va. 324, 73 S.E.2d 385, 35 A.L.R.2d 899. But reliance on such statute is often regarded as without merit in a case where the promise or assurance is given "at the time or before the debt is created," for in that case the promise is original and without the statute. *Goldsmith v. Erwin* (4th Cir. 1950), 183 F.2d 432, 435–6, 20 A.L.R.2d 240, with annotation. A number of courts, including South Carolina, however, have gone further and have held that, where the promisor owns substantially all the stock of the corporation and seeks by his promise to serve his personal pecuniary advantage, the question whether such promise is "within the statute of frauds" is a fact question to be resolved by the trial court and this is true whether the promise was made before the debt was incurred or during the time it was being incurred. *Da-*

vis v. Patrick (1891), 141 U.S. 479, 488–9, 12 S.Ct. 58, 35 L.Ed. 826; *Amer. Wholesale Corp. v. Mauldin* (1924), 128 S.C. 241, 244–5, 122 S.E. 576; *Tynes v. Shore* (1936), 117 W.Va. 355, 185 S.E. 845, 846–7; *Brown v. Benton* (1936), 209 N.C. 285, 183 S.E. 292, 293; *Farmers Federation, Inc. v. Morris* (1943), 223 N.C. 467, 27 S.E.2d 80, 81; *see, also,* cases cited and discussed in 46 A.L. R.3d at 437;[22] *cf., however, Turner v. Lyles* (1904), 68 S.C. 392, 48 S.E. 301. This is that type of case and may well have been resolved on this issue.

For the reasons stated, we conclude that the findings of the District Court herein are not clearly erroneous and the judgment of the District Court is

AFFIRMED.

---

**22.** The reasoning behind this holding was stated in *Emerson v. Slater* (1859), 63 U.S. 28, 43, 16 L.Ed. 360; as quoted with approval in *Gaines v. Durham* (1922), 124 S.C. 435, 441, 117 S.E. 732, 734, thus:

"Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself, or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability."