823 F.2d 548
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNION TRUST COMPANY OF MARYLAND, Plaintiff-Appellant,
v.
CHARTER MEDICAL CORPORATION, a Delaware Corporation,
Defendant-Appellee.
 No. 86-1645.
 United States Court of Appeals, Fourth Circuit.
 Argued May 6, 1987.
Decided July 2, 1987.
 
 Before SPROUSE and CHAPMAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 Lawrence Jay Gebhardt (James T. Heidelbach; Gebhardt & Smith, on brief) for appellant.
 Edward Bryan Krugman (H. Lamar Mixson; John E. Floyd; Bondurant, Mixson & Elmore, on brief) for appellee.
 PER CURIAM:
 
 
 1
 Union Trust Company of Maryland appeals from the district court's grant of summary judgment in favor of Charter Medical Corporation in union Trust's action against it. Union Trust contends that Charter Medical is liable for the balance of a $2,000,000 debt owed Union Trust by Psych Systems, Inc., a corporation in which Charter Medical was a minority stockholder. Finding no merit to Union Trust's position, we affirm.
 
 I.
 
 2
 Union Trust is a Maryland-based bank. In August 1983, Union Trust extended a $2,000,000 line of unsecured credit to Psych Systems, a publicly-held company that developed and sold computer systems and software for use in the administration of psychological tests. Psych Systems immediately borrowed $1,000,000 in August 1983, another $500,000 in December 1983, and the remaining $500,000 available to it in February 1984.
 
 
 3
 By early 1984, Psych Systems was not in a good financial position. Its audited financial statements for fiscal year 1983 showed a loss of $1,200,000. Moreover, it lost an additional $600,000 during the first quarter of 1984. Due to its deteriorating financial condition, Union Trust warned Psych Systems in May 1984 that it would demand immediate repayment of the loans unless it was given a security interest in Psych Systems' assets. Union Trust retracted its demands, however, after Psych Systems informed the bank that it was negotiating a merger with Charter Medical and explained the adverse effect such action would have on the possible merger.
 
 
 4
 Charter Medical is a publicly-held hospital management company, whose primary business is operating and managing psychiatric hospitals. Pleased with the performance of psychological testing equipment it purchased from Psych Systems, Charter Medical approached Psych Systems about the possibility of a merger and serious merger negotiations began in march 1984. On June 8, 1984, the negotiations culminated in the execution of a stock purchase agreement. Under the terms of the agreement, Charter Medical acquired twenty-five percent of Psych Systems' outstanding stock. In addition, the parties agreed that Charter Medical would make a tender offer for the remaining stock and, after the tender offer was successfully completed, Psych Systems would merge with Charter Medical.
 
 
 5
 On July 5, 1984, Brooke Tucker, the Union Trust loan officer responsible for Psych Systems' line of credit, met with Charter Medical representatives Jerold Cooper and Robert Thornton. Cooper and Thornton requested that, in light of the proposed merger, Union Trust not "call" Psych Systems' loans. They also stated, however, that Psych Systems would not grant the bank a security interest in its assets because that fact would have to be disclosed on the tender offer proxy, which might adversely affect the response to the proposed offer. They further stated that Charter Medical could not act as guarantor of the loan because it was only a minority stockholder in Psych Systems, and such a guarantee would violate the terms of many of its own loan agreements. Even though it received no security interest in Psych Systems and no guarantee from Charter Medical, Union Trust chose to await the outcome of the proposed merger rather than immediately calling the loans.
 
 
 6
 The merger never occurred. After examining Psych Systems' financial records, Charter Medical concluded that Psych Systems' financial condition was much worse than previously believed because it had substantially inflated its sales during the previous fiscal year. Because of, inter alia, Psych Systems' ailing financial position, Charter Medical elected to cancel its proposed tender offer and merger in late August 1984.[1]
 
 
 7
 During September 1984, all the parties continued to discuss Psych Systems indebtedness to Union Trust, as well as the possibility that a merger might still be tenable, albeit on different terms. In late September, however, these new negotiations collapsed and it became evident that Charter Medical was not going to merge with Psych Systems. It also became apparent to Union Trust that Charter Medical would not guarantee Psych Systems' loans. Accordingly, on October 3, 1984, Union Trust demanded and received a security interest from Psych Systems in its tangible and intangible assets. On October 23, however, Union Trust demanded repayment of the loans and seized the money in Psych Systems two bank accounts.[2] Psych Systems declared bankruptcy the following day, thereby making Union Trust's security interest avoidable.
 
 
 8
 In October 1984, Union Trust also commenced this action against Charter Medical in federal district court in Maryland, seeking to hold Charter Medical liable for the remainder of Psych Systems' $2,000,000 indebtedness. Its complaint asserted claims based on promissory estoppel, fraud, and "instrumentality/alter-ego." The district court granted summary judgment to Charter Medical on all three counts. Union Trust appeals only from the adverse ruling on its "instrumentality/alter-ego" claim, a claim the district court correctly identified as an attempt to pierce the corporate veil of Psych Systems in order to hold Charter Medical (as a shareholder of Psych Systems) liable to Union Trust for the outstanding balance of the loans.
 
 II.
 
 9
 A shareholder generally is not liable for the acts of a corporation. This doctrine of limited shareholder liability is usually expressed through the metaphor of the "corporate veil," and a shareholder will not be liable for the corporation's actions absent some action justifying a "piercing" of the corporate veil. See DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co., 540 F.2d 681, 683 (4th Cir. 1976). Under Maryland law, the corporate veil may not be pierced unless "it is necessary to prevent fraud or enforce a paramount equity." Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc,, 275 Md. 295, 310, 340 A.2d 235 (1975). Union Trust concedes, as it must, that Charter Medical is not guilty of any fraudulent conduct. It contends, however, that a "paramount equity" justifies piercing the corporate veil of Psych Systems. We disagree.
 
 
 10
 A "paramount equity" has been described as "an equity which requires enforcement and which is paramount to the ordinary expectation of limited liability on the part of the shareholder." Starfish Condominium Association v. Yorkridge Service Corp., 295 Md. 693, 714, 458 A.2d 805 (1983). Union Trust points to no Maryland case where the corporate veil has been pierced on the basis of a "paramount equity." In any event, we do not believe the facts in this case can establish the existence of a "paramount equity" that justifies piercing the corporate veil of Psych Systems.
 
 
 11
 First, Charter Medical did not induce Union Trust to establish Psych Systems unsecured line of credit, nor did it induce Union Trust to loan Psych Systems the $2,000,000. The line of credit and the loan transactions occurred before Charter Medical had any contact with Union Trust. Second, Union Trust admits that Charter Medical never promised to act as guarantor of the loan. Finally, there is no evidence that Psych Systems would have been in any better position to repay the loans if Union Trust had demanded payment at an earlier date. As the district court stated:
 
 
 12
 [Union Trust,] as a sophisticated lender, took a calculated risk not to pull down the house [of] cards by calling the loan and, instead, to await the outcome of the possible Psych Systems/Charter merger. In effect, in instituting this suit Union Trust is trying to have it both ways; it seeks to obtain--after the fact in the recreated setting of the courtroom--what it alleges would have been the benefits of a decision to call the loan--a decision which, in the real setting of the commercial world, it contemporaneously declined to make.
 
 
 13
 In sum, we conclude that no "paramount equity" justifies piercing the corporate veil of Psych Systems in order to hold Charter Medical liable for the remainder of Pysch Systems $2,000,000 indebtedness to union Trust.
 
 
 14
 In view of the above, the judgment of the district court is affirmed.
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 Under the terms of the June 8 agreement, the tender offer and merger were subject to certain conditions precedent, including the condition that Charter Medical not discover any adverse undisclosed material facts upon a full review of Psych Systems' financial records
 
 
 [2]
 Union Trust seized $441,000--the $326,000 that Psych Systems had in its Union Trust account and an additional $115,000 in another account at the Maryland National Bank