KINNEY SHOE CORPORATION, a New York corporation, Plaintiff–Appellant,

v.

Lincoln M. POLAN, Defendant–Appellee.

No. 90–2466.

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1991.

Decided July 17, 1991.

As Amended Aug. 26, 1991.

William David Levine, St. Clair and Levine, Huntington, West Virginia, for plaintiff-appellant.

D.C. Offutt, Jr., argued (John M. Poma, on brief), Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, W.Va., for defendant-appellee.

Before HALL, Circuit Judge, CHAPMAN, Senior Circuit Judge, and WARD, Senior District Judge for the Middle District of North Carolina, sitting by designation.

## OPINION

CHAPMAN, Senior Circuit Judge:

Plaintiff-appellant Kinney Shoe Corporation ("Kinney") brought this action in the United States District Court for the Southern District of West Virginia against Lincoln M. Polan ("Polan") seeking to recover money owed on a sublease between Kinney and Industrial Realty Company ("Industrial"). Polan is the sole shareholder of Industrial. The district court found that Polan was not personally liable on the lease between Kinney and Industrial. Kinney appeals asserting that the corporate veil should be pierced, and we agree.

### I.

The district court based its order on facts which were stipulated by the parties. In 1984 Polan formed two corporations, Industrial and Polan Industries, Inc., for the purpose of re-establishing an industrial manufacturing business. The certificate of incorporation for Polan Industries, Inc. was issued by the West Virginia Secretary of State in November 1984. The following month the certificate of incorporation for Industrial was issued. Polan was the owner of both corporations. Although certificates of incorporation were issued, no organizational meetings were held, and no officers were elected.

In November 1984 Polan and Kinney began negotiating the sublease of a building in which Kinney held a leasehold interest. The building was owned by the Cabell County Commission and financed by industrial revenue bonds issued in 1968 to induce Kinney to locate a manufacturing plant in Huntington, West Virginia. Under the terms of the lease, Kinney was legally obligated to make payments on the bonds on a semi-annual basis through January 1, 1993, at which time it had the right to purchase the property. Kinney had ceased using the building as a manufacturing plant in June 1983.

The term of the sublease from Kinney to Industrial commenced in December 1984, even though the written lease was not signed by the parties until April 5, 1985. On April 15, 1985, Industrial subleased part of the building to Polan Industries for fifty percent of the rental amount due Kinney. Polan signed both subleases on behalf of the respective companies.

Other than the sublease with Kinney, Industrial had no assets, no income and no bank account. Industrial issued no stock certificates because nothing was ever paid in to this corporation. Industrial's only income was from its sublease to Polan Industries, Inc. The first rental payment to Kinney was made out of Polan's personal funds, and no further payments were made by Polan or by Polan Industries, Inc. to either Industrial or to Kinney.

Kinney filed suit against Industrial for unpaid rent and obtained a judgment in the amount of $166,400.00 on June 19, 1987. A writ of possession was issued, but because Polan Industries, Inc. had filed for bankruptcy, Kinney did not gain possession for six months. Kinney leased the building until it was sold on September 1, 1988. Kinney then filed this action against Polan individually to collect the amount owed by Industrial to Kinney. Since the amount to which Kinney is entitled is undisputed, the only issue is whether Kinney can pierce the

corporate veil and hold Polan personally liable.

The district court held that Kinney had assumed the risk of Industrial's undercapitalization and was not entitled to pierce the corporate veil. Kinney appeals, and we reverse.

## II.

We have long recognized that a corporation is an entity, separate and distinct from its officers and stockholders, and the individual stockholders are not responsible for the debts of the corporation. *See, e.g., DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.,* 540 F.2d 681, 683 (4th Cir.1976). This concept, however, is a fiction of the law " 'and it is now well settled, as a general principle, that the fiction should be disregarded when it is urged with an intent not within its reason and purpose, and in such a way that its retention would produce injustices or inequitable consequences.' " *Laya v. Erin Homes, Inc.,* 352 S.E.2d 93, 97–98 (W.Va.1986) (quoting *Sanders v. Roselawn Memorial Gardens, Inc.,* 152 W.Va. 91, 159 S.E.2d 784, 786 (1968).

Piercing the corporate veil is an equitable remedy, and the burden rests with the party asserting such claim. *DeWitt Truck Brokers,* 540 F.2d at 683. A totality of the circumstances test is used in determining whether to pierce the corporate veil, and each case must be decided on its own facts. The district court's findings of facts may be overturned only if clearly erroneous. *Id.*

Kinney seeks to pierce the corporate veil of Industrial so as to hold Polan personally liable on the sublease debt. The Supreme Court of Appeals of West Virginia has set forth a two prong test to be used in determining whether to pierce a corporate veil in a breach of contract case. This test raises two issues: first, is the unity of interest and ownership such that the separate personalities of the corporation and the individual shareholder no longer exist; and second, would an equitable result occur if the acts are treated as those of the corporation alone. *Laya,* 352 S.E.2d at 99. Numerous factors have been identified as relevant in making this determination.*

* The following factors were identified in *Laya:*

(1) commingling of funds and other assets of the corporation with those of the individual shareholders;

(2) diversion of the corporation's funds or assets to noncorporate uses (to the personal uses of the corporation's shareholders);

(3) failure to maintain the corporate formalities necessary for the issuance of or subscription to the corporation's stock, such as formal approval of the stock issue by the board of directors;

(4) an individual shareholder representing to persons outside the corporation that he or she is personally liable for the debts or other obligations of the corporation;

(5) failure to maintain corporate minutes or adequate corporate records;

(6) identical equitable ownership in two entities;

(7) identity of the directors and officers of two entities who are responsible for supervision and management (a partnership or sole proprietorship and a corporation owned and managed by the same parties);

(8) failure to adequately capitalize a corporation for the reasonable risks of the corporate undertaking;

(9) absence of separately held corporate assets;

(10) use of a corporation as a mere shell or conduit to operate a single venture or some particular aspect of the business of an individual or another corporation;

(11) sole ownership of all the stock by one individual or members of a single family;

(12) use of the same office or business location by the corporation and its individual shareholder(s);

(13) employment of the same employees or attorney by the corporation and its shareholder(s);

(14) concealment or misrepresentation of the identity of the ownership, management or financial interests in the corporation, and concealment of personal business activities of the shareholders (sole shareholders do not reveal the association with a corporation, which makes loans to them without adequate security);

(15) disregard of legal formalities and failure to maintain proper arm's length relationships among related entities;

(16) use of a corporate entity as a conduit to procure labor, services or merchandise for another person or entity;

(17) diversion of corporate assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors, or the manipulation of assets and liabilities

The district court found that the two prong test of *Laya* had been satisfied. The court concluded that Polan's failure to carry out the corporate formalities with respect to Industrial, coupled with Industrial's gross undercapitalization, resulted in damage to Kinney. We agree.

It is undisputed that Industrial was not adequately capitalized. Actually, it had no paid in capital. Polan had put nothing into this corporation, and it did not observe any corporate formalities. As the West Virginia court stated in *Laya*, " '[i]ndividuals who wish to enjoy limited personal liability for business activities under a corporate umbrella should be expected to adhere to the relatively simple formalities of creating and maintaining a corporate entity.' " *Laya*, 352 S.E.2d at 100 n. 6 (quoting *Labadie Coal Co. v. Black*, 672 F.2d 92, 96–97 (D.C.Cir.1982)). This, the court stated, is " 'a relatively small price to pay for limited liability.' " *Id.* Another important factor is adequate capitalization. "[G]rossly inadequate capitalization combined with disregard of corporate formalities, causing basic unfairness, are sufficient to pierce the corporate veil in order to hold the shareholder(s) actively participating in the operation of the business personally liable for a breach of contract to the party who entered into the contract with the corporation." *Laya*, 352 S.E.2d at 101–02.

In this case, Polan bought no stock, made no capital contribution, kept no minutes, and elected no officers for Industrial. In addition, Polan attempted to protect his assets by placing them in Polan Industries, Inc. and interposing Industrial between Polan Industries, Inc. and Kinney so as to prevent Kinney from going against the corporation with assets. Polan gave no explanation or justification for the existence of Industrial as the intermediary between Polan Industries, Inc. and Kinney. Polan was obviously trying to limit his liability and the liability of Polan Industries, Inc. by setting up a paper curtain constructed of nothing more than Industrial's certificate of incorporation. These facts present the classic scenario for an action to pierce the corporate veil so as to reach the responsible party and produce an equitable result. Accordingly, we hold that the district court correctly found that the two prong test in *Laya* had been satisfied.

■ In *Laya*, the court also noted that when determining whether to pierce a corporate veil a third prong may apply in certain cases. The court stated:

When, under the circumstances, it would be reasonable for that particular type of a party [those contract creditors capable of protecting themselves] entering into a contract with the corporation, for example, a bank or other lending institution, to conduct an investigation of the credit of the corporation prior to entering into the contract, such party will be charged with the knowledge that a reasonable credit investigation would disclose. If such an investigation would disclose that the corporation is grossly undercapitalized, based upon the nature and the magnitude of the corporate undertaking, such party will be deemed to have assumed the risk of the gross undercapitalization and will not be permitted to pierce the corporate veil.

*Laya*, 352 S.E.2d at 100. The district court applied this third prong and concluded that Kinney "assumed the risk of Industrial's defaulting" and that "the application of the doctrine of 'piercing the corporate veil' ought not and does not [apply]." While we agree that the two prong test of *Laya* was satisfied, we hold that the district court's conclusion that Kinney had assumed the risk is clearly erroneous.

Without deciding whether the third prong should be extended beyond the context of the financial institution lender men-

between entities to concentrate the assets in one and the liabilities in another;
(18) contracting by the corporation with another person with the intent to avoid risk of nonperformance by use of the corporate entity; or the use of a corporation as a subterfuge for illegal transactions;

(19) the formation and use of the corporation to assume the existing liabilities of another person or entity.
*Laya*, 352 S.E.2d at 98–99 (footnote omitted).

tioned in *Laya*, we hold that, even if it applies to creditors such as Kinney, it does not prevent Kinney from piercing the corporate veil in this case. The third prong is permissive and not mandatory. This is not a factual situation that calls for the third prong, if we are to seek an equitable result. Polan set up Industrial to limit his liability and the liability of Polan Industries, Inc. in their dealings with Kinney. A stockholder's liability is limited to the amount he has invested in the corporation, but Polan invested nothing in Industrial. This corporation was no more than a shell—a transparent shell. When nothing is invested in the corporation, the corporation provides no protection to its owner; nothing in, nothing out, no protection. If Polan wishes the protection of a corporation to limit his liability, he must follow the simple formalities of maintaining the corporation. This he failed to do, and he may not relieve his circumstances by saying Kinney should have known better.

### III.

For the foregoing reasons, we hold that Polan is personally liable for the debt of Industrial, and the decision of the district court is reversed and this case is remanded with instructions to enter judgment for the plaintiff.

REVERSED AND REMANDED WITH INSTRUCTIONS.