25 F.3d 1039
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Lee H. EAVENSON, Plaintiff-Appellant,
v.
Patrick RUNDLE, individually; John Laurita, individually;
Kenneth R. Faerber, Commissioner of West Virginia Department
of Energy; The Travelers Indemnity Company, a Connecticut
Corporation; James Seremitis, Defendants-Appellees,
and
LAKEVIEW MINING COMPANY, a/k/a Lakeview Mining Company,
Incorporated, Defendant.
 No. 93-1383.
 United States Court of Appeals, Fourth Circuit.
 Argued: December 7, 1993.
Decided: May 26, 1994.
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg. William M. Kidd, Senior District Judge. (CA-87-13-C)
 Patrick Charles McGinley, Morgantown, West Virginia, for Appellant.
 AndrewG. Fusco, Fusco & Newbraugh, Morgantown, West Virginia, for Appellees.
 RobertJ. Shostak, Sowash, Carson & Shostak, P.A., Athens, Ohio, for Appellant.
 Ross Maruka, Fairmont, West Virginia, for Appellee Seremitis.
 N.D.W.Va.
 VACATED AND REMANDED.
 Before ERVIN, Chief Judge, HALL, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 OPINION
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Lee Eavenson appeals a grant of summary judgment to Patrick Rundle, John Laurita, and James Seremitis dismissing Eavenson's complaint for damages allegedly arising from violations of the Federal Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. Sec. 1270(a) & (f), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Sec. 1965(a), and state law.
 
 
 2
 The gist of this controversy is whether Rundle, Laurita, and Seremitis engaged in coal mining operations on Eavenson's land as a partnership trading as Lakeview Coal Company (the partnership) or through Lakeview Coal, Inc. (the corporation).
 
 
 3
 Eavenson contends that Rundle, Laurita, and Seremitis are liable because the partnership mined the coal on his property. Rundle, Laurita, and Seremitis contend that they never formed a partnership. They assert that the corporation mined the coal and that they are not personally responsible. Eavenson counters that even if the corporation mined the coal, the facts justify piercing the corporate veil. He also claims Rundle, Laurita, and Seremitis are personally liable because of their tortious, personal participation in the mining operation.
 
 
 4
 The district court granted summary judgment, ruling that Rundle, Laurita, and Seremitis were not personally liable. It held that the corporation conducted the mining operation on Eavenson's land and that Eavenson had failed to produce sufficient evidence to pierce the corporate veil.
 
 
 5
 Because we conclude that genuine issues of material fact preclude summary judgment, we vacate the district court's order and remand the case for further proceedings.
 
 
 6
 * Facts about the partnership, Lakeview Coal Company, include the following:
 
 
 7
 p The partnership applied for a permit to prospect for coal on Eavenson's land.
 
 
 8
 p Seremitis attested to the truth of the application which identified Rundle, Laurita, and him as partners. At that time the corporation did not exist.
 
 
 9
 p Subsequently the partnership applied for a permit to mine the coal. Again, Seremitis stated under oath that the three were partners. By this time West Virginia had issued a charter for the corporation.
 
 
 10
 p Seremitis signed the reclamation bond as a partner.
 
 
 11
 p The partnership opened a bank account. This was the only bank account the coal mining venture used.
 
 
 12
 p The partnership was named as the insured in a liability policy. Laurita individually paid the premium.
 
 
 13
 p Nearly four years after receiving the mining permit, the partnership applied for a permit to mine an additional 61 acres.
 
 
 14
 p The partnership never transferred its permit to a corporation although West Virginia law would have allowed such a transfer.
 
 
 15
 p At a West Virginia Department of Energy show cause hearing regarding the partnership's failure to reclaim the strip mine on Eavenson's property, Laurita testified:
 
 
 16
 I will backfill the job now if they [Seremitis and Rundle] come up with one third participation. But I shouldn't spend the twenty-seven thousand dollars without their help.
 
 
 17
 But they are blatantly rejecting anything I try to do. The two partners, the two other one-third partners don't seem to care. And that's about all I have to say about it. There's nothing that I can do. I will backfill it on a one-third basis.
 
 
 18
 They have corporate protection. They know they have corporate protection and they're telling me, you know, do what you can do.
 
 
 19
 p Laurita personally agreed to pay all fines imposed on the partnership.
 
 II
 
 20
 Facts about the corporation, Lakeview Coal, Inc., include the following:
 
 
 21
 p Rundle, Laurita, and Seremitis formed the corporation after the partnership obtained the prospecting permit and before the partnership obtained the mining permit.
 
 
 22
 p They contend that Seremitis signed the application for the mining permit while he was operating a backhoe and that he neither read it nor would have understood it had he read it. They contend that a consultant made a mistake when preparing the application.
 
 
 23
 p The lessee named in the Eavenson lease was Lakeview Coal Company, a corporation. Seremitis signed the lease on behalf of the lessee.
 
 
 24
 p The lessee's identification was a misnomer because there was no such corporation. The lawyer representing Eavenson told him that the lessee was a corporation.
 
 
 25
 p Although the attorney for the corporation prepared stock certificates, they were never executed or issued.
 
 
 26
 p The corporation's capital was $21,000.
 
 
 27
 p Seremitis was treasurer from 1983-1985, but the corporation had only one annual meeting and two directors' meetings.
 
 
 28
 p The corporation produced no minute book, but copies of the minutes of two meetings were in its attorney's files.
 
 
 29
 p The corporation did not own the equipment used at the Eavenson mine. Rundle, Laurita, Seremitis, and another mining company owned various equipment. There is, however, a dispute about the ownership of one piece of equipment.
 
 
 30
 p The corporation filed federal tax returns and claimed depreciation for a piece of equipment that Laurita and Rundle admittedly owned. They claim the admission of their ownership is a mistake.
 
 
 31
 p The corporation registered with the West Virginia Tax Department. It was granted a Business Franchise Certificate.
 
 
 32
 p The corporation registered with the West Virginia Department of Employment Security, and it was granted a certificate under the West Virginia Workers' Compensation Law.
 
 
 33
 p The corporation paid substantial sums to enterprises in which Rundle, Laurita, and Seremitis were interested. These sums were carried on the corporation's books as notes receivable, but the corporation's accountant testified that the payments were for equipment rental. He had no documentation for the notes or for the rental.
 
 
 34
 p The corporation disbursed sums in excess of $10,000 without complying with its bylaws.
 
 
 35
 p The corporation never presented a corporate resolution to establish a bank account. It used the partnership account.
 
 
 36
 p Rundle, Laurita, and Seremitis were each paid $12,000 in 1984.
 
 
 37
 p Gross receipts of coal mined from Eavenson's property were $872,430.
 
 
 38
 p Rundle, Laurita, and Seremitis admit that royalties are due and owed to Eavenson, but the parties dispute the amount.
 
 
 39
 p The corporation is insolvent.
 
 III
 
 40
 We review summary judgments de novo. Miller v. Federal Deposit Ins. Co., 906 F.2d 972, 974 (4th Cir.1990). Summary judgment is appropriate if the record discloses that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is inappropriate if the dispute about a material fact is "genuine"--that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether summary judgment is proper, a court must draw every reasonable inference from the facts in favor of the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).
 
 
 41
 Viewing the entire record, we conclude that genuine issues of material fact make summary judgment inappropriate on the issue of whether the partnership or the corporation conducted the mining project. Neither were properly identified as the lessee in the mining lease. Eavenson's knowledge that the lessee purported to be a corporation does not conclusively establish that the lessee mined the coal. The partnership obtained the mining permit, and West Virginia held the partners--not the corporation--accountable for reclamation violations. Whether a jury would accept the claim that naming the partners as applicants for the permit was a mistake raises a credibility question that on this record can only be determined by a trial. The many activities undertaken in the partnership's name would allow a reasonable jury--despite the claim of mistake--to find in favor of Eavenson.
 
 IV
 
 42
 Laya v. Erin Homes, 177 W. Va. 343, 352 S.E.2d 93 (1986), is a leading case explaining West Virginia law about piercing the corporate veil to hold shareholders individually liable. Whether a claimant has succeeded in piercing the corporate veil of an adversary--a determination requiring resort to equitable principles--is one involving numerous factual details and is rarely appropriate for summary judgment. Laya, 177 W. Va. at 347-48, 352 S.E.2d at 98-99. A court must determine whether there is such a unity of interest and ownership that the distinct personalities of corporation and shareholder no longer exist (formalities test) and whether an inequitable result would occur if the acts in question were attributed solely to the corporation (fairness test). Laya, 177 W. Va. at 349, 352 S.E.2d at 99. Laya lists 19 factors that must be considered to decide whether the corporation meets formality requirements. 177 W. Va. at 347-48, 352 S.E.2d at 98-99. We listed and applied these factors in Kinney Shoe Corp. v. Poulan, 939 F.2d 209, 211 & note (4th Cir.1991), in holding that a creditor could pierce the corporate veil.
 
 
 43
 At this stage of the proceedings it is enough to note that the corporate officers' and directors' failure to attend to the essential formalities of a corporate enterprise casts doubt on the propriety of summary judgment. Whether the corporation was undercapitalized is disputed. The shareholders' diversion of funds, as disclosed by their journal, while at the same time owing Eavenson royalties, which the corporation cannot pay, calls into question the corporation's ability to satisfy the fairness test. When the entire record is considered, it becomes apparent that trial--not summary judgment--is the appropriate procedure for determining whether the shareholders are entitled to the protection ordinarily provided by corporate operation of a business.
 
 
 44
 The district court held that Seremitis should be dismissed because he had settled with Eavenson. The appellees, including Seremitis, acknowledge that the district court was mistaken. Consequently, the dismissal of Seremitis is vacated.
 
 
 45
 The district court did not address whether Rundle, Laurita, and Seremitis could be personally liable for tortious personal participation, if any, in the mining activities. This issue, too, should be resolved on remand. See Sit-Set A.G. v. Universal Jet Exchange, 747 F.2d 921, 929 (4th Cir.1984).
 
 
 46
 The summary judgment entered by the district court is vacated, and the case is remanded for further proceedings. Eavenson shall recover his costs.
 
 VACATED AND REMANDED